Joney Joe **LUSTY**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–71.

Court of Criminal Appeals of Oklahoma.

Sept. 17, 1975.

Rehearing Denied Nov. 25, 1975.

Don Anderson, Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

PER CURIAM:

Appellant, Joney Joe Lusty, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–74–1175, for the offense of Murder in the First Degree, in violation of 21 O.S.Supp.1974, § 701.1. His punishment was fixed at death, and from said judgment and sentence a timely appeal has been perfected to this Court.

The defendant was jointly charged and previously tried, along with William Dale Davis; however, at that proceeding the jury found his co-defendant guilty of First Degree Murder, but was unable to agree upon a verdict with respect to the present defendant. See, *Davis v. State,* Okl.Cr., 542 P.2d 532 (1975).

At the trial, Officer Ronald Chambers of the Oklahoma City Police Department, testified that he was called to 1219 N. W. 8th Street, Oklahoma City, on March 29, 1974, to investigate a homicide. He arrived at the two-story frame apartment house shortly after 11:00 a.m., and identified State's Exhibit No. 1 as a photograph of that structure. Upon checking the manager's apartment, he noticed the door ajar, but observed no indication of forced entry. The witness found the victim lying on the floor on his back in the kitchen. The victim's front pants pockets were observed to have been turned inside out. The left pocket bore an open safety pin. The victim appeared to have multiple stab wounds in the upper part of the chest and the left abdominal area. A great amount of blood was observed. The officer found a waffle-type design shoe print on the kitchen floor, unlike the smooth soles of the victim's shoes. Later, the officer observed the same waffle-type design, in blood, just outside the door of Apartment No. 9. The doorknob of Apartment No. 9 bore bloodstains and a drop of blood was observed on the lower door facing. A sketch was drawn in court on a blackboard reflecting the floor plan of the manager's apartment, and revealing the location thereof in relation to the hallway and Apartment No. 9. Records at the manager's apartment reflected that Apartment No. 9 was rented to Mr. Lusty and one Willie Davis. State's Exhibits Nos. 2 through 6 were identified as photographs of specific areas, and State's Exhibit No. 7 was identified as one of the homemade ledgers found in the manager's apartment. Exhibits No. 1 through No. 7 were then admitted into evidence.

The State's second witness, Dr. Tom L. Hewitt, testified that he was an Assistant State Medical Examiner and performed an autopsy on one Raymond Martin. The victim was found to have eighty-one (81) stab wounds and five (5) incised wounds. Twenty-seven (27) of these wounds en-

tered vital organs, of which any one of nine could have caused death. State's Exhibit No. 6 was identified as a photograph of the person on whom he performed the autopsy. State's Exhibit No. 8 was admitted as a wound diagram drawn by the witness. State's Exhibit No. 9, one of two sheets used to draw the wound diagram, was admitted. State's Exhibits Nos. 12 and 13, photographs reflecting the location of stab wounds, were admitted. After observing State's Exhibits Nos. 10 and 11, two knives, the witness stated that either one of the knives could have caused the stab wounds.

The State's third witness, Kathryn Gadberry, testified that on March 30, 1974, she went to the apartment of her sixty-six year old brother and, upon discovering his body, notified the telephone operator. She could not find the .22 caliber revolver that the victim kept. She related that he was saving money for his retirement and kept it pinned in his trouser pocket. He kept change marked with green paint in a glass peanutbutter jar, and in a plastic margarine container for use in the washer and dryer machines. The victim kept approximately $150.00 in his billfold, and also had collected the rent on the previous night. She identified State's Exhibits Nos. 10, 14 and 15, respectively, as the victim's knife, watch and keys. She identified State's Exhibit No. 6 as a photograph of her brother.

The State's fourth witness, Ken Welsh, testified that Raymond Martin had operated rental property for him at 1219 N. W. 8th Street, and that five dollars worth of marked dimes and quarters were left with him to operate the washing and drying machines. The coins were marked with blue-green paint. Certain coins, marked as State's Exhibit No. 16, were identified as having the same color. He testified that he turned over to the police the paint which was used to mark the coins. He further testified that previously he had seen a .22 caliber weapon that Mr. Martin kept in his apartment.

Officer Donald E. Chandler, of the Oklahoma City Police Department, then testified regarding the arrest of defendant at his brother's house on March 30, 1974. He further testified about an altercation which had occurred at the jail, in which defendant had struck one Officer Jackson.

After an in camera hearing, Officer Bill Snipes testified that on March 30, 1974, he proceeded to the jail to see defendant for the purpose of checking for coins. The defendant was passed out in his cell. When defendant's pockets were turned out, coins rolled out. One of the coins, a dime, bore light green paint and was admitted into evidence as State's Exhibit No. 17.

Homicide and Robbery Division Detective, Jerry Lee Guinn, testified that he was placed in charge of the investigation. At the rear of the apartment house, he observed a garbage can containing a white towel with apparent bloodstains. Male clothing and pieces of paper bearing the names of Joney Lusty and William Davis were also found. On March 31, 1974, he interviewed and advised defendant of his Miranda rights, which defendant stated that he understood. After being confronted with the painted dime, the defendant stated at first that he did not remember where he had gotten it. After being told about the investigation regarding the paint, defendant stated that he wanted to tell the truth. He related that he had moved out of the apartment, but after talking with Davis, he decided to go pay the rent to the apartment manager. Defendant knocked on the door and told the manager that they wanted to pay the rent. As the manager was walking toward the kitchen, Davis jumped him from behind and began stabbing him in the back. The manager fell down and Davis began stabbing him in the chest. After Davis removed the manager's billfold, the two split $250.00. Davis also removed a .22 caliber pistol. Defendant then stated that he searched the victim's pockets, finding a coin purse pinned inside. He placed the coin purse in his pocket and forgot to tell Davis about it. After split-

ting up with Davis, defendant opened the coin purse, around Second and Walker, finding a large number of one hundred dollar bills. He threw the coin purse away. He and Davis both had taken change from the peanutbutter jar. He further stated that he left an envelope full of one hundred dollar bills at his brother's house on S. E. 18th Street. Officers took defendant to this address where he told his brother, Leonard Lusty, that they were there to pick up the money that he had left with him. The officer followed defendant's brother to a bedroom where the brother removed the back from a radio and took out a white envelope which the witness identified as State's Exhibit No. 19, containing thirty-six (36) one hundred dollar bills. Defendant then took officers to a location where Davis had thrown away a box of personal belongings. The officers recovered some bloodstained clothing and papers with Davis' name. On April 5, 1974, Guinn interrogated Davis, first giving the Miranda warnings. Davis denied any knowledge, but when confronted with Lusty, he told officers that he wanted to tell his side of the story. He took officers to an alley where State's Exhibit No. 11, a knife, also identified as being in the photographs marked as State's Exhibits Nos. 20, 21 and 22, was recovered. Davis stated that he used the knife to stab Martin. State's Exhibits Nos. 11, 20, 21 and 22 were admitted into evidence. Defendant's confession, marked as State's Exhibit No. 18, and the money, State's Exhibit No. 19, were also admitted.

Police Lieutenant Don R. Schimmels testified that after obtaining a search waiver from Leonard Lusty he recovered a watch identified as State's Exhibit No. 14; keys, identified as State's Exhibit No. 15; and a goat-skin bag containing five (5) one hundred dollar bills, identified as State's Exhibit No. 23, from the residence at 705 S. E. 18th Street. A dime bearing green paint recovered from the southeast bedroom of this residence was marked as State's Exhibit No. 24. State's Exhibits Nos. 14 and 15 were admitted. State's Exhibits Nos. 23 and 24 were not admitted at this time.

Leonard Lusty testified that he was defendant's brother and that the defendant gave him thirty-six (36) one hundred dollar bills, State's Exhibit No. 19, and also five (5) one hundred dollar bills, State's Exhibit No. 23, for safekeeping.

Detective Adam Knight of the Oklahoma City Police Department, testified that on April 1, 1974, at approximately 4:30 p.m., he interrogated defendant in the city jail, first giving the Miranda warnings. Defendant told him that he and Davis, at approximately 10:00 p.m. on March 29, 1974, decided to rob Martin. Defendant went to the door of Martin's apartment and knocked, saying he wanted to pay his rent. Martin looked through the peephole and admitted defendant and Davis. Davis jumped Martin from behind and began stabbing him. Davis then took a butcher knife from the kitchen drawer and gave it to defendant, who put it in his belt. They took Martin's billfold, watch, and other articles. Defendant showed Detective Knight where he had hidden the butcher knife, State's Exhibit No. 10, and Knight recovered it. Defendant's oral statement was then incorporated in a written statement, State's Exhibit No. 25. At this point, the State rested its case in chief.

For the defendant, Ronald Wayne Smith testified that for a brief period he was a cellmate of defendant at the city jail on March 31, 1974. There were three guards and when an argument arose over defendant's request to make a phone call, more guards were called and one of them beat defendant with a club.

After being advised of his rights, Willie Dale Davis testified that he was the one who had killed Mr. Martin, and denied that he had discussed it with defendant or that defendant had participated in it. He further denied signing certain exhibits.

Officer Joseph P. Jackson testified that he was the jailer on duty when defendant

was brought to the jail. Defendant appeared to be drunk and was belligerent. When defendant struck Jackson, he was put in an isolation cell. There he was searched. Jackson denied that defendant had been struck or clubbed by any officers.

Taking the witness stand in his own behalf, the defendant testified that when he was first jailed he was put in a cell with Ronald Wayne Smith. An officer accused him of killing Martin and when he denied it, the officer accused him of lying. Three or four officers gathered and Officer Jackson opened the cell door and the officers struck defendant with a club and kicked him several times. He lost consciousness and when he awoke he was in an isolation cell. On the afternoon of March 31, 1974, Officer Guinn read him the Miranda warnings, which defendant understood. He signed the three pages of the written statement he made, State's Exhibit No. 18. He stated that although he asked for a lawyer, one was not brought in to advise him. He denied stabbing Martin and stated that he accompanied Davis to the apartment merely to pay the rent. He knocked on the manager's door and was admitted. In two or three seconds, Davis entered, grabbed Martin from behind, and commenced stabbing him. Defendant tried to stop Davis, ". . . but he just kept on stabbing him . . ." [Tr. 459]. He testified that he was shocked and that Davis came over and put some of the victim's money into his pocket. Defendant stated he then became curious, so he checked the victim's pockets and found an envelope with hundred dollar bills in it. Defendant related that Davis had warned him not to snitch and that he was afraid of Davis. They left the apartment and Davis got rid of his bloody clothes and defendant went to his brother's house. Saturday he got to drinking beer with his brother and gave him the money for safekeeping. Defendant had the police officer read State's Exhibit No. 25 to him and he then signed it, but could not really understand all of it. The defense then rested, and the State presented the testimony of four rebuttal witnesses.

On rebuttal, the State called Officer Jerry Guinn, Officer Larry Upchurch, Terry Binswanger and Marilyn Scott. All four identified State's Exhibit No. 26 as the written statement taken from Willie Davis on April 3, 1974. They were all present at the time the statement was taken and they all observed Mr. Davis sign the statement. This concluded the testimony given at trial.

■ Defendant's first assignment of error alleges that the jury was improperly separated after sequestration. In particular, the home of one of the jurors, Mrs. Woods, was burglarized the first night of sequestration. Her husband being out of town on business, no one could be located to apprise the police of what, if anything, had been taken in the burglary. The court resolved this difficulty by appointing a special bailiff, who accompanied Mrs. Woods in a deputy's car to her residence. The trial judge, an assistant district attorney, and the defense counsel, also went to Mrs. Woods' residence and were present while she discussed the burglary with police officers and her daughter. Upon being informed of her misfortune, the trial court questioned her in regard to what impact, if any, the burglary would have on her ability to render an impartial judgment in the instant case. She replied that it would not influence her judgment in the case, or make her feel vindictive toward either the defendant or the State.

Defense counsel did not question Mrs. Woods' sincerity in answering the questions about whether her misfortune would affect her fairness or ability to sit as a juror. Nor was it contended that any improper communication was made to Mrs. Woods concerning any issue or aspect of the pending trial. Rather, it was counsel's objection that the mere apprising Mrs. Woods of her burglary and allowing her to view the details and discuss it with police, rendered her mentally and emotionally incapable of serving as a juror, and that her

exposure to the other members of the jury could have likewise affected them. Counsel contends that the simple and safe solution would have been for the court to discharge Mrs. Woods and seat the alternate juror.

After a careful examination of the record, we cannot agree with this contention. The procedure for seating an alternate juror is governed by 22 O.S.1971, § 601a, which provides that an alternate juror shall be seated only in case a regular juror be discharged because of illness or death before the case is submitted to the jury for their determination. Therefore, it would appear that the trial court, in the case at bar, could not have seated the alternate juror in this situation.

■ As a result of numerous decisions, it is well established that, after final submission, the separation of the jury or any action subjecting them to outside influence is presumed to prejudice the defendant and the burden is on the State to prove otherwise. Before final submission, the courts are clear upon the matter of separation. The burden of proof is upon the defendant to show prejudice or denial of a fair trial. See, *Hayes v. State,* Okl. Cr., 397 P.2d 524 (1964). Accordingly, the burden of showing prejudice or denial of a fair trial, in the instant case, was upon the defendant and the mere contention that Mrs. Woods was rendered mentally and emotionally incapable of serving as a juror and that her exposure to other members of the jury could have likewise affected them, without more, is in and of itself insufficient to meet this burden. This becomes even more apparent when consideration is given to the fact that the trial court, upon questioning Mrs. Woods, elicited answers from her indicating that her decision would not be affected in any way by her misfortune. Therefore, we find this assignment of error to be without merit.

■ In his final assignment of error, the defendant contends that the death sentence is unconstitutional by virtue of the decision of the United States Supreme Court in the consolidated cases of *Furman v. Georgia, Jackson v. Georgia* and *Branch v. Texas,* 408 U.S. 233, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). However, in this regard we need only observe that this contention was thoroughly analyzed and rejected by this Court in the consolidated opinion of *Williams and Justus v. State,* Okl.Cr., 542 P.2d 554 (1975).

The evidentiary hearing contemplated under the provisions of 21 O.S.Supp.1974, §§ 701.5 and 701.6 was previously assigned and heard by this Court. No evidence was offered by either the defendant or the State upon that hearing. Rather, shortly prior thereto, the defendant filed a motion requesting that this Court establish guidelines for the review of death sentences under those statutory provisions. As we have since held in our decision in *Williams and Justus v. State, supra,* that these provisions are unconstitutional, no further discussion thereof is necessary here.

Pursuant to Rule 1.11 of this Court, 22 O.S.Supp.1974, Chap. 18, App., this case was previously assigned and heard for oral argument. We have now carefully reviewed the entire record before this Court, and thoroughly considered the argument and authority presented, and have determined that the record is free of any error of law requiring reversal. The judgment and sentence is, accordingly, *affirmed.*

Pursuant to Rule 1.18, 22 O.S.Supp. 1974, Chap. 18, App., the defendant is advised that any Petition for Rehearing herein must be filed with the Clerk of this Court within fifteen (15) days of the date upon which this Opinion is filed therein.

## ORDER ON REHEARING

Appellant was heretofore sentenced to suffer death for the offense of First Degree Murder in Case No. CRF–74–1175 of the District Court, Oklahoma County, and upon appeal that sentence was thereafter affirmed in the above entitled cause. This Court then stayed the issuance of Mandate herein, upon its own motion, pending a res-

olution of related issues raised in the Petition for Rehearing in *Williams and Justus v. State*, Okl.Cr., 542 P.2d 554 (1975), and oral argument was thereafter presented upon consolidated hearing. For the reasons discussed in our Opinion on Rehearing in *Williams and Justus,* the decision previously rendered herein is hereby *reaffirmed.*

It is therefore ordered, adjudged and decreed that the Order of this court staying execution of sentence herein pending appeal be dissolved, and the Order of this Court staying issuance of Mandate is hereby superseded, and the Clerk of this Court is directed to issue Mandate Forthwith.

It is further ordered, adjudged and decreed that the judgment and sentence herein appealed from be carried out by the electrocution of Appellant, Joney Joe Lusty, by the Warden of the State Penitentiary at McAlester, Oklahoma, on Monday, February 23, 1976.