**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jessica M. LOFTON,
Defendant-Appellant.**

No. 85-1177.

United States Court of Appeals,
Tenth Circuit.

Nov. 12, 1985.

R. Michael Holmes (James E. Nesland with him on the briefs) of Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colo., for defendant-appellant.

Alleen S. Castellani, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty. and Kurt J. Shernuk, Asst. U.S. Atty., on the brief), Topeka, Kan., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and WEST,* District Judge.

SEYMOUR, Circuit Judge.

Jessica Mae Lofton was found guilty of murder in the second degree, a lesser included offense of first degree murder, in violation of 18 U.S.C.A. § 1111 (1984 & 1985 Supp.). On appeal, she contends (1) that the evidence was insufficient to sustain the conviction, and (2) that the trial court failed adequately to instruct the jury of her heat of passion defense and its effect on the government's burden of proof, and that this failure constitutes plain error. We agree with these second contentions and therefore reverse.

---

* The Honorable Lee R. West, United States District Judge, Western District of Oklahoma, sitting by designation.

## I.

On the morning of June 5, 1984, at the Fort Riley Military Reservation in Geary County, Kansas, Jessica Lofton fatally shot her husband, Ronald. She immediately turned herself in to the military police. Her defense at trial was that she acted in the heat of passion on adequate provocation, which would constitute the lesser included offense of voluntary manslaughter. *See* 18 U.S.C. § 1112 (1982).

The record clearly establishes, and the Government concedes, that a heat of passion defense was raised sufficiently to merit an instruction. Lofton testified that she had flown into a rage when her daughter was sexually abused by a family friend four years earlier in Germany and that she had threatened the abuser with a gun. While they were still stationed in Germany, the daughter told her that Ronald had also abused her, but Lofton did not believe the child at that time. Corroborated testimony at trial tended to show that Ronald had sexually assaulted his stepdaughter in January 1983 in Kansas. The daughter's terrifying screams awoke neighbors, and she thereafter experienced recurrent nightmares which caused Lofton great distress.

Lofton made a number of futile or aborted attempts at criminal prosecution, therapy, and separation. She testified that she agreed to consider reuniting with her husband in April 1984 after he threatened to bring charges for welfare fraud if she and her daughter did not join him. Financial and other problems increased. Lofton testified that, several weeks before the shooting, she found her husband lifting up her daughter's nightgown. On the morning of the shooting, she met with an assistant county attorney, who declined to refile aggravated incest charges against Ronald and who told Lofton that her husband had retained counsel to defend any charges of sexual abuse. Incensed by this information, Lofton asked a friend to drive her to her husband. The three of them rode around while the couple argued. In the course of the argument, Lofton put a .22 caliber revolver to the back of her husband's head and shot him twice. Four days later he was pronounced dead.

## II.

### SUFFICIENCY OF EVIDENCE

Lofton first argues that the evidence of malice was insufficient to support a conviction for second-degree murder. At the close of the prosecution's case, Lofton moved for a judgment of acquittal under Fed.R.Crim.P. 29(a). The motion was denied and was not renewed at the close of all the evidence. The Government argues that, absent plain error, the failure to renew waived the objection to the denial of the motion. *See, e.g., United States v. Alfonso,* 738 F.2d 369, 372 (10th Cir.1984); *United States v. Parrott,* 434 F.2d 294, 295 (10th Cir.1970), *cert. denied,* 401 U.S. 979, 91 S.Ct. 1211, 28 L.Ed.2d 330 (1971). The waiver rule has been a target of criticism by this court, *see United States v. Lopez,* 576 F.2d 840, 842–43 (10th Cir.1978), but it need not form the basis of our affirmance, *see Alfonso,* 738 F.2d at 372.

■ Had Lofton renewed the motion, the sufficiency of the evidence would be determined by examining the entire record in the light most favorable to the Government. *See id.; United States v. Guerrero,* 517 F.2d 528, 530–31 (10th Cir.1975). Judged by this standard, the record discloses sufficient evidence of malice to sustain the conviction. There was testimony that, shortly before the shooting, Lofton had told two different people that she might kill her husband. One witness testified that Lofton stated "she was going to make him [Ronald Lofton] as miserable as she possibly could." Rec., vol. II, at 10. Although Lofton testified that she placed the gun in the car several days before the shooting, there was also evidence that, just prior to the shooting, she returned to her house to pick something up. This testimony is sufficient to sustain the verdict.

## III.

### HEAT OF PASSION INSTRUCTIONS

A criminal defendant is entitled to jury instructions on any theory of defense find-

ing support in the evidence and the law. Failure to so instruct is reversible error. *Bird v. United States,* 180 U.S. 356, 361–62, 21 S.Ct. 403, 405, 45 L.Ed. 570 (1901); *United States v. Jenkins,* 701 F.2d 850, 858 (10th Cir.1983) (citing cases); *United States v. Swallow,* 511 F.2d 514, 523 (10th Cir.), *cert. denied,* 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66 (1975). The sufficiency of the instructions is determined by viewing the charge as a whole. *Jenkins,* 701 F.2d at 858.

■ When a criminal defendant has raised a theory of defense, the trial court should refer to that theory and to the testimony bearing on it and submit the issue with an instruction on the applicable law. *Jenkins,* 701 F.2d at 859. The jury should be advised of the defendant's position so as to put the issues raised by the theory of defense squarely before it. *See Beck v. United States,* 305 F.2d 595, 599 (10th Cir.), *cert. denied,* 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123 (1962).

This kind of clarity is essential in a murder case with a heat of passion defense. The prosecution in a criminal case must prove beyond a reasonable doubt every element of the crime charged. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). To obtain a conviction for murder, the Government must establish beyond a reasonable doubt that the defendant acted with malice. *See* 18 U.S.C.A. § 1111(a). A voluntary manslaughter conviction requires proof beyond a reasonable doubt that the defendant acted without malice and "[u]pon a sudden quarrel or heat of passion." 18 U.S.C. § 1112(a). The distinction between malice and heat of passion led the Supreme Court to hold that, to obtain a murder conviction, the prosecution must "prove beyond a reasonable doubt the *absence* of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Mullaney v. Wilbur,* 421 U.S. 684, 697–98, 704, 95 S.Ct. 1881, 1888–89, 1892, 421 L.Ed.2d 508 (1975) (emphasis added). Failure to impose this requirement exempts the Government from its obligation under the Due Process Clause to prove the defendant guilty of murder beyond a reasonable doubt. *See id.*

We note that, two years after *Mullaney,* the Court upheld a state statute requiring a defendant to prove by a preponderance of the evidence the affirmative defense of "extreme emotional disturbance" to reduce second-degree murder to manslaughter. *See Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In our view, *Mullaney* is more analogous to this appeal. The state statute at issue in *Mullaney* defined murder as the unlawful killing of a human being with malice aforethought, 421 U.S. at 686 n. 3, 95 S.Ct. at 1883 n. 3, while in *Patterson* malice was not an element of the crime, 432 U.S. at 198, 97 S.Ct. at 2320. The *Patterson* Court distinguished *Mullaney* on this ground, *id.* at 212–16, 97 S.Ct. at 2328–30, and it did not retreat from its holding in *Mullaney* "that a State must prove *every ingredient of an offense* beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense." *Id.* at 215, 97 S.Ct. at 2329 (emphasis added).

Under federal law, malice is an element of murder. *See* 18 U.S.C.A. § 1111(a). The heat of passion defense is directly at odds with malice; in *Patterson*'s terms, the defense "serve[s] to negative" malice. 432 U.S. at 207, 97 S.Ct. at 2325. The rule of law articulated in *Mullaney,* therefore, controls our consideration of this appeal.

■ Taken together with a defendant's entitlement to jury instructions on the theory of defense, *Mullaney* requires us to hold that a defendant in a federal murder case who has sufficiently raised a heat of passion defense is entitled to instructions informing the jury of the theory of defense and of the Government's duty to prove beyond a reasonable doubt the absence of heat of passion in order to obtain a murder conviction. Accordingly, we must determine if the instructions in this case, taken as a whole, sufficiently advised the jury of

Lofton's defense and its effect on the prosecution's burden of proof.

Nowhere in the instructions did the court inform or suggest to the jury that Lofton's defense to murder was that she killed her husband in the heat of passion. Arguments and evidence cannot substitute for instructions by the court. *See Taylor v. Kentucky*, 436 U.S. 478, 488–89, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 (1978) (arguments do not dispense with need for instruction on presumption of innocence). The heat of passion was referred to only in the manslaughter instruction,[1] which did not advise the jury that this was Lofton's sole defense to murder.

More disturbing is the trial court's failure to instruct the jury on the Government's special burden when a heat of passion defense is raised: that the prosecution must prove beyond a reasonable doubt the absence of heat of passion in order to ob-

tain a conviction for murder. Instruction 13 defines heat of passion and states that the Government must prove it beyond a reasonable doubt in order to secure a manslaughter conviction. This is insufficient to inform the jury that, to obtain a conviction for murder, the prosecution must prove beyond a reasonable doubt that Lofton did *not* act in the heat of passion.

The core of the Government's argument is that the court implicitly defined malice and heat of passion as mutually exclusive and that the structure of the charge forced the jury to find the presence of malice, and thus the absence of heat of passion, in order to find murder. Together with the reasonable doubt standard, the Government contends, the instructions were sufficient under *Mullaney*.

We are not persuaded. Although "heat of passion" is defined in Instruction 13, and "malice" is defined in Instruction 8,[2] the

---

1. "INSTRUCTION NO. 13

"If you find that the defendant is not guilty of first degree murder then you must consider whether or not she is guilty of the lesser included offense of second degree murder. If you determine that the defendant is not guilty of that offense then you are required to consider whether or not the defendant is guilty of a lesser included offense known in the law as manslaughter.

"Manslaughter is the unlawful killing of a human being without malice. Manslaughter is committed when a human being is killed unlawfully in the sudden heat of passion caused by adequate provocation.

"The essential elements of the offense of manslaughter, each of which the Government must prove beyond a reasonable doubt, are:

"First: That the defendant inflicted an injury or injuries upon the deceased from which the deceased died;

"Second: That the defendant so injured the deceased in the heat of passion;

"Third: That the heat of passion was caused by adequate provocation; and

"Fourth: That the homicide was committed without legal justification or excuse.

"It is necessary that the defendant have inflicted an injury or injuries upon the deceased, and that the deceased have died as a result of such injury. The defendant must have injured the deceased in the heat of passion, caused by adequate provocation and without malice.

"If a homicide is committed in the heat of passion, caused by adequate provocation, the offense is manslaughter rather than murder. In addition to adequate provocation, there must be heat of passion caused by that provocation. Both the provocation and the passion must exist at the time the injury or injuries causing the death of the deceased are inflicted.

" 'Heat of passion' includes rage, resentment, anger, terror, and fear. Heat of passion may be produced by fear as well as by rage.

"Provocation, in order to be adequate to reduce the offense from murder to manslaughter, must be such as might naturally induce a reasonable man in the passion of the moment to lose self-control and commit the act on impulse and without reflection. A blow or other personal violence may constitute adequate provocation. But trivial or slight provocation, entirely disproportionate to the violence of the retaliation, is not adequate provocation to reduce the offense from murder to manslaughter. Mere words standing alone, however, no matter how insulting, no matter how offensive, no matter how abusive, are not adequate to reduce the offense to manslaughter. It must be such provocation as would arouse a reasonable man.

"It is necessary that the homicide have been committed without legal justification or excuse."

Rec., vol. I, at 25–26.

2. Instruction 8, which outlines the elements of murder, defines malice as follows:

" 'Malice,' as the term is used here, is but another name for a certain state or condition

charge did not specifically distinguish the two as inconsistent mental states or inform the jury that finding one necessarily precluded finding the other. Moreover, while the court distinguished first-degree from second-degree murder on the basis of premeditation, it did not differentiate second-degree murder from manslaughter on the basis of the distinction between malice and heat of passion.

Indeed, the very structure of the charge precluded the jury from considering the effect of Lofton's heat of passion defense on the murder count. Instruction 13 advised the jury that if it found the defendant not guilty of first-degree murder, it must then consider if she was guilty of second-degree murder; if it found that she was not guilty of second-degree murder, it must then determine if she was guilty of manslaughter. Rec., vol. I, at 25. Thus, the jury was instructed to consider manslaughter only if it found Lofton not guilty of murder. The verdict form followed this same format. Although the charge instructed the jury at least seven times of the Government's burden of proof beyond a reasonable doubt of each element of the crime, and notwithstanding the direction that the instructions must be considered as a whole,[3] this was insufficient to inform the jury that the Government must prove the absence of heat of passion beyond a reasonable doubt. A clear and unambiguous instruction to this effect is the constitutional minimum required by *Mullaney. Cf. Bollenbach v. United States,* 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946) ("A conviction ought not to rest on an equivocal direction to the jury on a basic issue").

The trial court did not have the benefit of requested instructions from counsel. The general homicide instructions on which the court apparently relied, *see* 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions §§ 41.01 *et seq.* (3d ed. 1977), 594–96 (1985 Supp.), do not comport with *Mullaney*'s requirements. Jury instructions must be tailored to the peculiar facts of each case. While pattern instructions provide valuable guidance to the trial courts, over-reliance may produce instructions unsuited to the particular case. *See United States v. DeWolf,* 696 F.2d 1, 4 (1st Cir.1982); *United States v. Steele,* 685 F.2d 793, 810 (3d Cir.), *cert. denied,* 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982).

Defense counsel failed to object to the court's proferred instructions, despite ample opportunity. Generally, an appellate court will not consider alleged error unless timely and proper objection was made. *United States v. Newman,* 733 F.2d 1395, 1401–02 (10th Cir.1984); *United States v. Kilburn,* 596 F.2d 928, 935 (10th Cir.1978); *cert. denied,* 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979). When an error affects substantial and fundamental rights, however, we may remedy the defect under the plain error rule. *See United States v. Young,* —— U.S. ——, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985); Fed.R.Crim.P. 52(b). We find such error here.

REVERSED.

The mandate shall issue forthwith.

---

of a person's mind or heart. Because no one can look into the heart or mind of another, the only means of determining whether or not malice existed at the time of a killing is by inference drawn from the surrounding facts and circumstances, as shown by the evidence in the case."
Rec., vol. I, at 19.

**3.** Paragraph three of Instruction 1 provides: "You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. If any rule, direction or idea be stated in varying ways, no emphasis thereon is intended by me and none must be inferred by you." Rec., vol. I, at 12.