**Donald Lee GATES, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F-85-811.

Court of Criminal Appeals of Oklahoma.

April 13, 1988.

Nathan J. Gigger, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Jean M. LeBlanc, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Donald Lee Gates, appellant, was tried by jury and convicted of Possession of a Controlled Dangerous Substance With Intent to Distribute [63 O.S.1981, § 2–401], After Former Conviction for Sale of Marijuana, in Case No. CRF–84–5858, in the District Court of Oklahoma County, the Honorable James L. Gullett, District Judge, presiding. The jury set punishment at seven-and-one half (7½) years imprisonment and a One Thousand ($1,000) Dollar fine. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

On December 12, 1984, the Ardmore, Oklahoma, police arrested William Tyrone Burdex, at which time the police found a bottle of phencyclidine [PCP] in the pocket of Burdex's coat. The Ardmore police promised Burdex they would dismiss the charge for possession of PCP if he would cooperate with the Oklahoma Bureau of Narcotics [OBN]. Burdex agreed to act as a confidential informant and help arrest the man from whom he purchased the PCP. The OBN drove Burdex to Oklahoma City that same day.

The OBN and Burdex checked into a motel in Oklahoma City, at which time the OBN fitted Burdex with a body transmitter and gave him marked money to purchase PCP. The OBN drove Burdex to appellant's residence, where Burdex asked to speak to Roy Thompson, the man from whom Burdex purchased the PCP seized in Ardmore. A carpenter, who was remodeling appellant's home, directed Burdex to another address about a block away.

Burdex went to Thompson's house and tried to buy two ounces of PCP. Thompson said he did not have any PCP at the time but could arrange a purchase. Thompson arranged two purchases for Burdex: an ounce from a man called "Sugar Bear" and one-and-a-half ounces from Thomas Morgan. The OBN overheard these transactions through the transmitter taped to Burdex.

As per the OBN's instructions, Burdex tried to arrange a purchase of ten ounces of PCP through Thompson. Thompson said a shipment of that quantity would be available the next day, and he would arrange the purchase. Burdex agreed to pay $4,000 for ten ounces of PCP and agreed to return the next day, December 13, 1984, to complete the transaction.

On December 13, the OBN again fitted Burdex with a body transmitter. When Burdex arrived at Thompson's house, Thompson told him that the individual who had the ten ounces of PCP had just left. Burdex agreed to meet the seller later that day. Upon returning to Thompson's house, Burdex met Wiggins. Wiggins showed Burdex the PCP. In accordance with the OBN's instructions, Burdex told Wiggins he would buy one ounce of PCP and, if the ounce was of good quality, would then buy the remaining nine ounces. Wiggins questioned Burdex, wanting to know the identity of his partners, where they could be found, and whether Burdex had the $4,000 to buy the entire ten ounces. Wiggins refused to sell just one ounce. Burdex and Wiggins walked toward appellant's house. Appellant drove up and asked Burdex whether he wanted to buy the ten ounces of PCP. Appellant parked the truck at his house and walked back to Burdex and Wiggins. As the three men walked to appellant's house, they argued about the sale. Appellant told Burdex "let's get the deal on or let's call it off." Arriving at appellant's house, Wiggins and appellant got in the truck and tried to get Burdex to go with them to meet his partners. Burdex refused to get in the truck.

By this time, Wiggins and appellant were thoroughly suspicious of Burdex, and appellant called off the sale. Appellant told Burdex that if he ever came to their neighborhood again, appellant would kill him. Wiggins said something was not right and pulled a pistol, pointing it at Burdex while passing the PCP to appellant with the other hand. Burdex started running across an

open field next to appellant's house, with appellant in pursuit. The OBN heard this entire transaction through the body microphone on Burdex, and once they heard that Burdex was in trouble, converged on the area in several unmarked cars. Burdex continued to run across the field and looked over his shoulder to see if appellant was gaining on him. Burdex saw that appellant had stopped by a junked car in the field and was pouring the PCP on the ground. Appellant then walked back to his front yard, where he was arrested. The OBN recovered the empty bottle from beside the junked car. Three chemists tested the residue in the bottle, each of whom determined the residue was PCP.

Thompson, Wiggins, and appellant were charged with conspiracy to distribute PCP and with possession with intent to distribute. Wiggins was charged separately with a weapons charge. Thompson pleaded guilty. Wiggins and appellant were tried conjointly for conspiracy and for possession with intent to distribute. The trial judge declared a mistrial on the conspiracy charge because the prosecutor withheld an exculpatory tape recording which proved that Wiggins and appellant were not parties to the transactions or conversations with Thompson on December 12, 1984. The court refused to grant a mistrial for the charges which arose on December 13, 1984, for possession of a controlled dangerous substance with intent to distribute or for the charge of pointing a weapon, because the exculpatory evidence was not material to these charges.

■ For his first assignment of error, appellant asserts that the evidence was insufficient for conviction and that the trial court erred in overruling appellant's demurrer to the evidence. The appellant argues that the evidence is insufficient to prove the essential elements of possession and that he acted jointly with Wiggins to distribute a controlled dangerous substance.

A demurrer to the evidence is a motion for a directed verdict which admits for the sake of argument the facts which the State's evidence tends to prove. If there is any competent evidence reasonably sup-porting the allegations of the charge, the demurrer should be overruled. *Strube v. State*, 739 P.2d 1013, 1017 (Okla.Crim.App. 1987). We find the trial court properly refused to sustain appellant's demurrer to the evidence.

The Due Process Clause requires that the State prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the accused] is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). *See Pebeahsy v. State*, 742 P.2d 1162, 1164 (Okla.Crim.App.1987). After *Winship*, the critical inquiry by a reviewing court of the sufficiency of the evidence is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) (emphasis in the original). *See Spuehler v. State*, 709 P.2d 202, 203–04 (Okla.Crim.App.1985).

The elements of possession of a controlled dangerous substance with intent to distribute are: (1) knowing and intentional; (2) possession; (3) of a controlled dangerous substance; (4) with intent to distribute. 63 O.S.1981, § 2–401. The evidence adduced at trial proved that appellant participated in the attempted sale of PCP to Burdex; that appellant knew the substance was PCP; that Wiggins passed the PCP to appellant; that appellant then attempted to destroy the evidence by pouring it on the ground; that the residue in the bottle was, in fact, PCP; and that ten ounces of PCP is sufficient to constitute about one hundred "hits", which is far more than necessary for personal consumption. Viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found the essential elements of the crime of possession of a controlled dangerous substance with intent to distribute beyond a reasonable doubt. This assignment of error is without merit.

For his second assignment of error, the appellant asserts he was denied due process of law guaranteed by the Fifth and

Fourteenth Amendments of the United States Constitution because the State withheld exculpatory evidence within its possession and knowledge from the defense. Appellant relies on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); and *McDonald v. State*, 553 P.2d 171 (Okla. Crim.App.1976).

Appellant and Wiggins were represented by the same counsel at the preliminary hearing. Subsequent to the preliminary hearing, defense counsel requested in writing "any wire or oral communications placed under surveillance for the purpose, in whole or in part, in gathering evidence or leads against any Defendant or Defendants." [O.R. 16] While inartfully drafted, we interpret this request as sufficient to place the prosecution on notice that defense counsel was seeking any tape recording in the possession of the State which would exculpate appellant. By time of trial, Wiggins retained separate counsel.

Wiggins' counsel cross-examined one of the OBN agents who tape recorded the transmissions broadcast by the body microphone placed on Burdex. Counsel asked: "Mr. Wiggins and Mr. Gates were not involved on the 12th, were they, in the recorded incidents you gathered that day?" The agent responded: "Yes, I believe the defendants and Mr. Thompson went to their residence that night. I believe that was their only involvement." [Tr. 233] At close of cross-examination, outside the hearing of the jury, the prosecution notified defense counsel and the court that the prosecutor possessed a tape recording which proved that Wiggins and appellant were not present at, nor participated in, any of the transactions which occurred on December 12th.

■ The trial court found: (1) the testimony by the OBN agent as to the conspiracy charge was inadvertent; (2) the error deprived the defendants of a fair trial and was incurable; (3) the court would grant a mistrial for the conspiracy charge, but would not grant a mistrial on the possession with intent to distribute charge or the

pointing a weapon charge, because the statement by the agent would not impair these two charges. [Tr. 279] The trial court informed the jury that the conspiracy charge was stricken because of procedural error and the jurors were not to consider the conspiracy charge. The jurors were to consider only the possession with intent to distribute and the pointing a weapon charges.

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the Supreme Court found that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either as to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecutor."

In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, the Supreme Court found three distinct standards to judge materiality of the evidence. First, when the prosecutor knows or should know that its case includes perjured testimony, a resulting conviction "is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* 427 U.S. at 103, 96 S.Ct. at 2397. In this situation, a strict standard of materiality is necessary, not merely because of prosecutorial misconduct, but more importantly because of the "corruption of the truth-seeking function of the trial process." *Id.* at 104, 96 S.Ct. at 2397. *Hall v. State*, 650 P.2d 893, 897 (Okla.Crim.App.1982).

In the instant case, the trial court found, as a question of fact, that the agent's testimony that Wiggins and appellant were involved with Thompson on the 12th was inadvertant, not perjured. We are bound by the trial court's finding of fact, unless clearly erroneous. In determining whether a *Brady* violation occurred, however, the question of materiality and the possible effect of the withheld evidence on the verdict is a mixed question of fact and law. *Bowen v. Maynard*, 799 F.2d 593, 610 (10th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986). Therefore, the trial court's ultimate conclusion

under *Brady* is open to appellate review by this Court. We find the agent's testimony and the withheld tape recording material to the conspiracy charge. We further find that the trial court's declaration of a mistrial on the consipracy charge cured the due process violation.

The second standard for reviewing the materiality of the evidence concerns a situation where defense counsel requests disclosure of particular evidence, such as happened in the instant case. The specific request put the prosecutor on notice of its obligation to disclose. In such a case, the verdict must be set aside if "the suppressed evidence might have affected the outcome of the trial." *Agurs, supra* 427 U.S. at 104, 96 S.Ct. at 2398. In the third situation, where the defense has made a general request for all *Brady* material, the prosecution is put on no better notice than if no request is made, and the judgment will be set aside "if the omitted evidence creates a reasonable doubt that did not otherwise exist...." *Id.* at 112, 96 S.Ct. at 2402.

■ Since *Agurs,* the Supreme Court has established a single test for materiality in those cases where the defense made a specific request, a general request, or no request for *Brady* material:

The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985). We earlier found that the trial court properly declared a mistrial on the conspiracy charge and that such mistrial cured the due process violation. We now apply the *Bagley* standard to determine whether the exculpatory evidence withheld by the State was material to the remaining charge against the appellant for possession of a controlled dangerous substance with intent to distribute.

The withheld tape recording exculpated Wiggins and appellant from the transac-

tions with Thompson on December 12. The remaining charge arose from the occurences on December 13. The evidence adduced at trial proved that the ten ounces of PCP were not available on the 12th, that Wiggins and appellant possessed the ten ounces on the 13th, and they attempted the sale to Burdex on that day. We find that, had the State provided the tape recordings made on the 12th to the defense prior to trial, there is no reasonable probability that the result would have been different for the possession with intent to distribute charge arising on the 13th. Failure to provide appellant with the tape does not undermine confidence in the outcome on the remaining charge. This assignment of error is without merit.

For his third assignment of error, the appellant asserts that the trial court's refusal to sever the firearms charge from the possession with intent to distribute charge deprived him of a fair trial. The original record and the trial transcripts are silent whether Wiggins or appellant sought to sever their trials. The record only reflects that Wiggins' counsel argued that the firearms charge should be severed from the conspiracy and the possession charges.

■ The decision to grant or deny a motion for severance is within the trial court's discretion, and its ruling will not be disturbed on appeal absent a clear showing of abuse of discretion resulting in prejudice. *Cooper v. State,* 584 P.2d 234, 237 (Okla.Crim.App.1978). We look to the grounds advanced in support of the motion by appellant to determine whether the trial court abused its discretion. *Id.* The grounds offered by Wiggins' counsel for severance of the firearms charge were based upon a contention that an allegedly insufficient information on the conspiracy and possession charges contaminated the firearms charge. [Tr. 191] Appellant's counsel failed to join in the motion to sever the firearm charge, nor did he independently raise this issue at trial. Therefore, this issue is not properly before us for review. 12 O.S.1981, § 2104(A). Moreover, to establish an abuse of discretion, the appellant must factually demonstrate that the denial

of severance deprived him of a fair trial, not merely that a separate trial might have offered him a better chance of acquittal. *United States v. Pack,* 773 F.2d 261, 267 (10th Cir.1985). Appellant has presented no evidence that denial of severance deprived him of a fair trial. This assignment of error is without merit.

For his fourth and final assignment of error, the appellant asserts he was denied a fair and impartial trial because the prosecutor cast aspersions upon defense counsel during voir dire. Appellant relies on *Black v. State,* 663 P.2d 22, 24 (Okla. Crim.App.1983). During voir dire, the prosecutor asked a prospective juror: "Do you believe that lawyers have a sneaky way we sometimes ask questions and get people to say things that they really don't mean?" Defense counsel properly objected to the prosecutor's question. The court responded "Yes, I don't like that. I'm going to sustain that objection. That's not a proper question." [Tr. 132] We agree that the prosecutor's question was improper and not to be condoned. In the instant case, however, appellant's counsel exploited the prosecutor's remark during closing argument. Appellant can hardly complain that the prosecutor's statement prejudiced him when his own counsel explored the very statement he now claims as error. A conviction cannot be reversed for alleged misconduct of the prosecuting attorney, unless that conduct might in some degree have influenced the verdict. *Caffey v. State,* 661 P.2d 897, 903–04 (Okla.Crim.App.1983). We find that the statement by the prosecutor was not so prejudicial as to substantially affect the jury's verdict. This assignment of error is without merit.

Accordingly, for the foregoing reasons, the appellant's judgment and sentence should be, and hereby is, AFFIRMED.

BRETT, P.J., concurs and BUSSEY, J. concurs.