Vernon **HALL**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–85–130.

Court of Criminal Appeals of Oklahoma.

Aug. 25, 1988.

Lisbeth McCarty, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Jean M. Leblanc, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, Vernon Hall, was tried jointly with Marcus Madden by jury in Osage County District Court, Case No. CRF–84–25. Each was convicted of Forcible Sodomy, After Former Conviction of a Felony. 21 O.S.Supp.1982, § 888; 21 O.S. 1981, § 51. The jury set punishment at forty (40) years' imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. In appellant Hall's appeal, we affirm.

Appellant first claims that the evidence was insufficient to warrant his conviction. We therefore turn to that evidence.

The victim, R.O., was an inmate at the Conner Correctional Center, as was appellant. R.O. and appellant, known in the institution as "Bulldog," and Madden, known as "Rerun," worked in the laundry together. R.O. claimed that the two men had made sexual advances toward him about December 24, 1983, and on other occasions. The two men also pushed him around sometime around January 7, 1984. About 7 a.m. on January 12, 1984, appellant, Madden and a third man entered R.O.'s cell, which could not be seen from the central guard area. While the third man kept watch, Madden and appellant so- domized R.O. The three left about 7:30 a.m. R.O. left his cell around 8:30 a.m. to get his clothes, then returned to the cell, where he stayed the rest of the day. R.O. did not report the attacks until after 6 p.m. that evening, and then only reluctantly in response to his supervisor's inquiries concerning his absence from work. R.O. had visited with the supervisor on previous occasions about being sexually harassed, and did not tell the supervisor that the sodomy incident had occurred earlier that day. As a result, no medical examination was conducted on R.O. to determine if the sodomy had recently occurred.

■ Appellant claims that the evidence was insufficient because R.O.'s testimony was inconsistent, contradictory and not sufficiently corroborated. On cross-examination, R.O. admitted he had made similar allegations of sexual harassment while in the Tulsa County Jail, the Kay County Jail, at Horace Mann Correctional Center and at the Granite facility. Comparison of R.O.'s trial testimony with other statements and earlier testimony showed that R.O. was inconsistent concerning the height of the third man in the cell at the time of the attack. Additionally, R.O. had earlier claimed that he was attacked after his roommate locked him out of his cell. At trial, he claimed that the first act, the one committed by Madden, occurred while R.O. was on his back; he had earlier stated that he was placed on his stomach during the first act. R.O. denied that he had been forced to perform oral sodomy on the two men; he had earlier claimed that he was forced to perform the oral sodomy incidents on an earlier occasion. R.O. testified that each man had committed sodomy on him only one time; he had earlier indicated that each man had repeatedly sodomized him. He testified that the men were in his cell one time the day of the attack; he had earlier indicated that they were there on two occasions. R.O. also testified at trial that his underwear had been ripped off at the beginning of the attack. He did not see it after the attack, and it was never produced as evidence at trial.

Appellant cites *Moore v. State*, 501 P.2d 529 (Okl.Cr.1972), *cert. denied*, 410 U.S. 987, 93 S.Ct. 1517, 36 L.Ed.2d 185 (1973), and *Taylor v. State*, 537 P.2d 434 (Okl.Cr. 1975) to show that when a sodomy victim's testimony is inconsistent and contradictory, corroborative evidence is necessary to sustain a conviction. Even if the evidence here is inconsistent and contradictory, the corroborating evidence is sufficient to warrant the conviction. The laundry supervisor related prior instances where R.O. indicated he had been the target of sexual advances and he could tell that there was a conflict between R.O. and the defendants by observing them at work. Of more importance is the witness' corroborating testimony that R.O. did not go to work the day of the attack, and an admission by defendant Hall that he was in C block, the location of R.O.'s cell, the morning of the attack. We think the amount of corroboration here is "of such dignity as to give it weight with the jury upon the question that the actual crime has been committed," *Weston v. State*, 77 Okl.Cr. 51, 138 P.2d 553, 554 (1943), and is sufficient. *See Peninger v. State*, 721 P.2d 1338, 1341 (Okl.Cr.1986). Based on all the evidence presented in the light most favorable to the State, we find that a rational trier of fact could find the essential elements of the crime charged beyond a reasonable doubt. *Spuehler v. State*, 709 P.2d 202, 203–04 (Okl.Cr.1985).

Appellant next claims that the jury was improperly influenced by outside forces, and that as a result, appellant's sentence was harsher than it should have been. He claims that the jury was influenced by the proximity of the jury room to the district attorney's office and the court reporter's office, where the probation and parole officer also had a desk. The court reporter's office was in front of the jury room, and the district attorney's office was across the hall from the court reporter's office. He also claims that regulations relating to probation and parole were posted inside the jury room, which was apparently used as a "waiting room" for the probation officer's clients when the jury was not in session, and that this list improperly influenced the jury. We shall address these together.

Appellant cites *Lusty v. State*, 542 P.2d 545 (Okl.Cr.1975), *vacated on other grounds*, 429 U.S. 907, 96 S.Ct. 3217, 49 L.Ed.2d 1214 (1986), for the proposition that any action subjecting the jurors to outside influence is presumed to prejudice defendant and the burden is on the State to prove otherwise. This is correct. However, before this presumption can be imposed, a defendant must make more than mere bald allegations that there was an action that subjected the jurors to outside influence. *See Chatham v. State*, 712 P.2d 69, 71 (Okl.Cr.1986). The record is totally devoid of any improper conduct by either the court reporter or the district attorney while they were in their offices and while the jury was deliberating. Were we to hold that the mere proximity of an office to a jury deliberation room created a presumption of prejudice, we would effectively force most district attorneys in the State of Oklahoma to move, as most have offices inside the courthouse. Such a notion is absurd. That the court reporter overheard one juror express his opinion of appellant's guilt during deliberations was properly given no weight by the trial court: to allow the reporter's testimony concerning what one juror said to another during deliberations regarding the case would be to intrude on the private deliberations and thought processes of the jury. It is a long established rule that jurors are not allowed to impeach the verdict. *See Tanner v. United States*, —— U.S. ——, ——, 107 S.Ct. 2739, 2748–49, 97 L.Ed.2d 90 (1987) and the discussion therein. The same principle should apply here. As the Supreme Court once said, if such a practice were allowed,

all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation,

the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.

*McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915). Appellant's counsel made a record that he had seen the sign concerning probation and parole regulations, but did not read into the record what the sign said, how large it was, its location in the jury room, or anything else about it. Appellant has therefore failed in his initial attempt to prove prejudice. *Chatham*, 712 P.2d at 69. This contention is therefore without merit.

■ Appellant also claims that misconduct by the prosecutor denied him of his right to a fair trial. He first cites a statement made during closing argument that he claims invoked societal alarm. The prosecutor asked the jury to "tack on some time" and told the jury he wanted them "to deliver a message, and let it travel." We do not think that these remarks, when considered in their entirety and in the context of an after former conviction of a felony proceeding, were unduly prejudicial. *See Croan v. State*, 682 P.2d 236, 239 (Okl.Cr. 1984).

■ Appellant also claims that he was deprived of his right to examine exculpatory evidence, because he was not furnished with a list of two people the State planned to call as witnesses until the morning of the trial. Appellant claims that he attempted to obtain the witnesses for his own case, but was unable to do so on such short notice.

The witnesses would have been Charles Miller, a guard at the prison who was on duty at the time of the attack, and Linda Cisco, a psychological counselor at the prison. Miller's logs were introduced at trial, and they showed that he made no notations of anything unusual the morning R.O. was attacked. Testimony was introduced at trial that R.O. had visited with Cisco the same day as the attack, but that R.O. did not tell her that he had been sodomized. Thus, the jury heard the information favorable to appellants that would have been brought out had the two been located for trial. We

need not determine whether the State suppressed the evidence, as the omission did not undermine confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed. 2d 481 (1985). The contention is therefore without merit.

■ Appellant next claims that he was denied his right to a jury drawn from a representative cross-section of the community. Both appellants are black, and the jury was entirely white. However, appellant's trial attorney admitted in his post-trial motions that there were no blacks on the venire panel, that the panel was drawn randomly from a list of the registered voters of the county, and that therefore there was no systematic exclusion of blacks. Before an appellant can show a violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), he must show that members of his racial group were excluded based on that racial classification. *Id.* at 96, 106 S.Ct. at 1723. There was no such exclusion here, and there is therefore no merit to the argument. *See also Johnson v. State*, 731 P.2d 993, 998 (Okl.Cr. 1987), *cert. denied,* ── U.S. ──, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987).

■ Appellant next claims that he was subjected to double jeopardy in that he was tried twice for the same offense. Appellant refers to an earlier disciplinary proceeding at the prison. He admits that this Court has already ruled that double jeopardy is not present in an administrative punishment by prison officials and a subsequent trial in a court of law. *Boyle v. State*, 569 P.2d 1026, 1028 (Okl.Cr.1977); *Ex parte Kirk*, 96 Okl.Cr. 272, 252 P.2d 1032, 1034–35 (1953). However, he claims that an acquittal in the earlier prison hearing warrants a departure from that rule. We disagree. It is not the *outcome* of the proceeding that is the key factor, but the different *nature* of the proceeding itself. We see no merit to appellant's contention.

■ Appellant then claims that he was denied effective assistance of counsel. He admits that counsel was adequate during the trial, but that counsel did not have

enough time to adequately prepare for the preliminary hearing, held on April 4 and May 24, or trial, which began on June 18. We do not agree.

Only when the surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial. *United States v. Cronic*, 466 U.S. 648, 662, 104 S.Ct. 2039, 2048, 80 L.Ed.2d 657 (1984). In other words, the reviewing court must look to actual performance to determine whether counsel was ineffective. Here, counsel was more than adequate. And, after reviewing the record, we cannot say that the outcome would have been different had counsel been able to call an additional witness to testify that R.O. had a motive for fabricating a story about being sexually assaulted. Since neither prong of the test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) has been satisfied, appellant's claim must fail.

Therefore, appellant's judgment and sentence is AFFIRMED.

BUSSEY and PARKS, JJ., concur.