Michael McCORMICK, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–90–516.

Court of Criminal Appeals of Oklahoma.

Jan. 12, 1993.

Richard O'Carroll and Barry Derryberry, Asst. Public Defenders, Tulsa, for appellant.

Susan Brimer Loving, Atty. Gen., Thomas C. Riesen, Asst. Atty. Gen., Oklahoma City, Thomas Gilbert, Asst. Dist. Atty., Tulsa, for the State.

## OPINION

LANE, Presiding Judge:

Appellant, Michael McCormick, was found guilty of the crime of Murder in the First Degree following a trial by jury in Tulsa County District Court Case No. CF–89–3589. Punishment was assessed at life in prison and Appellant was sentenced accordingly. He has appealed his conviction alleging six grounds of error: that unnecessarily gruesome photographs were improperly introduced at trial; that the instruction on flight shifted the burden of proof from the State; that the instructions concerning "heat of passion" did not set out the appropriate burdens of proof; that the instructions did not adequately define provocation; that the trial court violated the rules of sequestration when it allowed the jury to separate between the two stages of the trial; and that the trial should not have been bifurcated. We do not find any error which requires relief from this Court.

Immediately prior to the commission of this crime, Appellant was incarcerated for a period of nine months. During his incarceration, Appellant's wife, Marsha McCormick, became involved in an affair with her step-brother, Terry Wickham. Appellant became suspicious after his children mentioned that Wickham had been spending a lot of time with Marsha.

In the month before the present crime, Appellant received several weekend passes. During his second visit home, he confronted Marsha with his fears. Marsha told him that she was in love with Wickham and asked Appellant not to come home again until she had some time to think. Appel-

lant agreed, expressing his desire to maintain the marriage. He told Marsha, however, that Wickham was "dead meat" if he confronted him.

On the weekend of Appellant's third pass, Marsha made arrangements to leave the couple's children at Appellant's parent's home. She told them that she would be working late. Appellant's brother picked him up from the penitentiary and took him to his parent's home, where he stayed until about 11:30 p.m.

Rather than working late, Marsha had met Wickham at a local bar. Wickham became very intoxicated, so Marsha took him to her house. Both went to bed nude.

After leaving his parent's home, Appellant went to Marsha's house. He went to the back door of the house which was next to the bedroom window. The window was open and Appellant could see his wife and Wickham in the bed. He testified that the two were engaged in sexual relations, however, Marsha testified that the two were just sleeping close together.

Finding the back door locked, Appellant ran around to the front door of the house and went inside. He got a large knife from the kitchen and went into the bedroom. Appellant stabbed Wickham three times in the chest while he was lying on the bed. Marsha sat up and started yelling. Appellant grabbed her and held her in a headlock for a short period of time. When she told him that he was killing her, Appellant let her go. Wickham apparently moved on the bed and Appellant stabbed him an additional ten times in the back. He then ran out of the house and drove away. He drove until he reached Independence, Kansas.

Once in Independence, Appellant called his mother. She advised him to turn himself in, which he did. He was then transported back to Tulsa for trial.

■ In his first allegation of error, Appellant claims that a series of photographs showing Wickham's injuries were unfairly gruesome and should not have been admitted into evidence. He claims that because the pictures depicted the body after it was moved from the bed to the floor, there was no relevant purpose for the pictures other than inflammation of the jury. At issue specifically are three pictures of portions of Wickham's body and two pictures of the bloody mess on the bed.

■ We have considered allegations of this nature in many cases. Our opinion in *Lampkin v. State*, 808 P.2d 694 (Okl.Cr. 1991), succinctly states the rule of law which we will follow:

> The decision to admit photographs into evidence is within the sound discretion of the trial court and will be disturbed only upon a showing of abuse of discretion. *Lamb v. State*, 767 P.2d 887, 891 (Okl.Cr. 1988). Further, photographs are admissible if they are relevant and their probative value is not outweighed by their prejudicial value. *Id.*

In the *Lampkin* case, we held that pictures of a crime scene and of the victim (who was photographed at a hospital) were relevant to prove the corpus delicti. We find the same to be true in the present case. The two pictures showing the bed were relevant to the testimony of the witnesses concerning the placement of the bed and the view from the window. The three pictures of the victim showed the extensive wounds which were inflicted to the legs, back and chest.

■ Appellant claims that other evidence, such as pictures of the body after it was cleaned, could have been introduced and would have been less inflammatory. While that may well be true, there is no requirement that the visual effects of a particular crime be down played by the State. Gruesome crimes result in gruesome pictures. The only consideration to be made is whether the pictures are unnecessarily hideous, such that the impact on the jury can be said to be unfair. The pictures admitted [1] were graphic, as are most pictures of dead, murdered bodies; however, as was true in *Thomas v. State*, 811 P.2d 1337, 1345 (Okl.Cr.1991), the pic-

---

1. The trial court held that several other pictures were grossly prejudicial in their depiction of the body and appropriately denied admission of additional pictures.

tures "were not so repulsive as to be inadmissible."

In his second proposition, Appellant claims that the instruction concerning the effect of "flight" to avoid arrest on the determination of guilt improperly shifted the burden of proof to Appellant to establish his innocence.[2] Appellant cites a part of the last paragraph of the instruction as containing the offending language. That part reads:

If, after a consideration of all the evidence on this issue, you find beyond a reasonable doubt that the defendant was in flight, then this flight is a circumstance which you may consider with all the other evidence in the case *in determining the question of the defendant's guilt or innocence.* However, if you have a reasonable doubt that defendant was in flight, then the fact of any departure is not a circumstance for you to consider.

We have long held that evidence of flight may be considered as circumstantial evidence of guilt. *Allen v. State,* 783 P.2d 494 (Okl.Cr.1989); *Wills v. State,* 636 P.2d 372 (Okl.Cr.1981); *Farrar v. State,* 505 P.2d 1355 (Okl.Cr.1973). *See also Croan v. State,* 682 P.2d 236 (Okl.Cr.1984). The jury in this case was instructed that they first had to find that a "flight" did indeed occur, that it was "with a consciousness of guilt ... in order to avoid arrest for the crime with which he is charged." O.R. 34. If all these considerations were resolved against Appellant, the jury was then instructed to consider this conduct in the same manner as any other item of circumstantial evidence. We do not find that any part of the instruction improperly shifted the burden of proof of guilt from the State to Appellant.

The third issue presented concerns the instructions which the trial court gave the jury on Appellant's theory of defense. Throughout the trial, Appellant sought to prove that he was acting under the heat of passion. Accordingly, he requested and re-

ceived appropriate instructions on the lesser included charge of Manslaughter in the First Degree. In this allegation of error, Appellant complains that the instructions as given did not properly define the burdens of proof associated with this theory of guilt.

Specifically, Appellant complains that his proposed instruction number 10 should have been given. That instruction states, in pertinent part:

... In this regard, you are instructed that the State has the burden of proving beyond a reasonable doubt that the Defendant did not act in the heat of passion before you could convict him of First Degree Murder. If the State failed to prove beyond a reasonable doubt that the Defendant did not act in the heat of passion, then you cannot convict the Defendant of First Degree Murder, but must consider whether the Defendant is guilty of the lesser included offense of First Degree Manslaughter.

Although Appellant cites a myriad of authority on the subject raised by this proposition, the State's brief does not address the issue except to point out that the determination of jury instructions is left to the discretion of the trial court. While this proposition is certainly true, it does not begin to answer the question as to whether that discretion was abused in the present case. Accordingly, we must consider the issue without relevant argument or authority from the State.

The problem presented here involves a unique situation in that the lesser included offense of manslaughter in this case functioned not as simply an alternative to the charge of murder, but as an affirmative defense to the crime charged by the State. The killing which gave rise to the current charges was never disputed by Appellant. Throughout the trial, however, Appellant maintained that he lacked the malice aforethought necessary to sustain a conviction for murder because he was acting under

**2.** At trial, Appellant argued that the instruction was not warranted under the evidence. He notes that the issue was raised at trial, but apparently has abandoned that position on appeal.

the "heat of passion" at the time he killed Wickham.

Appellant's argument is based on *United States v. Lofton,* 776 F.2d 918 (10th Cir. 1985). *Lofton* concerned a federal murder prosecution during which the defendant maintained that although she had committed the killing, she had acted in a heat of passion, thus negating any finding of malice aforethought. At trial, Lofton requested (as did Appellant in this case) that the jury be instructed that once the defense of heat of passion is established, the burden of proof must of necessity shift to the prosecution to prove that the defendant *did not* act in the heat of passion. The claim was based on the due process requirements found in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

In *Lofton,* the Tenth Circuit held that a "defendant in a federal murder case who has sufficiently raised a heat of passion defense is entitled to instructions informing the jury of the theory of the defense and of the Government's duty to prove beyond a reasonable doubt the absence of heat of passion in order to obtain a murder conviction." *Lofton,* 776 F.2d at 920. The Court went on to consider the instructions as a whole to see if they properly defined the role of the jury in this instance.

After analysis of the instructions, the Court found that due process had been violated in the case. Although the crimes of First Degree Murder and Manslaughter were properly defined for the jury, other instructions limited the jury's consideration of manslaughter and the effect of the "heat of passion" evidence until after it determined that the crime of murder had not been established. The Court held that the structure of the jury charge coupled with the fact that the jury was not instructed that "heat of passion" was Lofton's only defense to the crime constituted "plain error[3]" requiring relief.

The rule of *Lofton* has been subsequently applied by the Tenth Circuit in a case involving Oklahoma's Uniform Jury In-

structions for these same two crimes. *Davis v. Maynard,* 869 F.2d 1401 (10th Cir.1989) *cert. granted and judgment vacated Saffle v. Davis,* 494 U.S. 1050, 110 S.Ct. 1516, 108 L.Ed.2d 756 (1990) on remand *Davis v. Maynard,* 911 F.2d 415 (10th Cir.1990). In *Davis,* the Court considered the way in which the instructions defined the differing *mens rea* requirements of the two offenses. The Court specifically found that "the instructions in this case, unlike those in *Lofton,* explicitly defined malice and heat of passion as mutually exclusive" leading to the conclusion that "the jury's finding of malice necessarily implies the absence of heat of passion." *Davis,* 869 F.2d at 1406.

The instructions in this case are distinctly different from those given in *Lofton.* As was the case in *Davis,* with respect to the instructions on Murder in the First Degree, the trial court instructed the jury that the State had the burden of proving that "the death was caused with malice aforethought." O.R. 30. Malice aforethought was specifically defined for the jury as meaning "a deliberate intention to take away the life of a human being." O.R. 32.

In the same manner, the jury was also instructed with respect to Manslaughter that the State had the burden of proving that "Defendant was in a heat of passion and said act was perpetrated without a design to effect death." O.R. 34. This instruction expressly indicated that the jury must find an absolute lack of premeditation in order to find Appellant guilty of this crime.

Instruction No. 6 informed the jury of the procedure which it should follow in determining which of the crimes, if any, was established by the evidence. Following the instructions concerning the elements of the crime of murder, the jury was instructed:

> "if you fail to find the defendant guilty of the crime of Murder First Degree or should you entertain a reasonable doubt thereof, but should you find from the

---

**3.** There was no objection to the jury instructions as given interposed at trial.

evidence that the defendant is guilty of the lesser included crime of Manslaughter in the First Degree, as defined in these instructions, it will be your duty to find the defendant guilty of the lesser included crime of Manslaughter in the First Degree." O.R. 33.

We find that the combined effect of these instructions make this case distinctly different from *Lofton* and more like *Davis*. While it is true that this case was similar to *Lofton* in that heat of passion was offered as an affirmative defense, we find that the effect of the instructions is not comparable. The Tenth Circuit specifically found that the differing intent requirements of the two crimes as defined by the instructions in *Lofton* were not mutually exclusive. In the present case, the language used by the trial court was unequivocal; a murder conviction required proof of a deliberate intent to kill while manslaughter should be found if the killing was done without a design to effect death.

Also unlike *Lofton*, the instructions in this case indicated to the jury that proof of the two crimes should be examined together rather than individually. The jury was not precluded from consideration of the lesser included crime until the greater crime was eliminated as an option. Instruction 6 makes it clear that the evidence of the two crimes must be considered conjointly.

■ While we find that the instruction offered by the defense as directed in *Lofton* [4] would not have been inappropriate in this instance, we do not find that the instructions as given were inadequate to ensure that the appropriate burdens of proof were allocated to the parties. *United States v. Bryant*, 892 F.2d 1466, 1469 (10th Cir.1990); *Dunckhurst v. Deeds*, 859 F.2d 110, 113–14 (9th Cir.1988). Accordingly, we do not find that error has occurred.

■ Appellant's fourth allegation of error also concerns the sufficiency of the instructions. Appellant submitted a complete set of proposed instructions prior to settlement of the instructions. Included in that set was a request that the trial court give the uniform instruction on "Adequate Provocation," Oklahoma Uniform Jury Instructions—Criminal 457 (OUJI–CR.) The court marked the box which indicated that the proposed instruction was accepted, however, when the jury was actually instructed, this instruction was left out, apparently through inadvertence.

Appellant claims that the resulting failure of the trial court to define "adequate provocation" is reversible error based on *Morgan v. State*, 536 P.2d 952 (Okl.Cr. 1975). In *Morgan*, a case involving the sufficiency of instructions in a case involving the defense of self-defense, we defined a number of instructions which should be given in cases where a conviction for First Degree Manslaughter may be warranted. These instructions were later made a part of the uniform instructions. The instruction on provocation requested by Appellant was one of these instructions. Error resulted when the instruction was not given.

Having found error, however, our inquiry does not cease. We must now examine the instructions as a whole in order to determine whether the omission of this particular instruction is reversible error. We have long held that when considering a claim that jury instructions are inadequate, we will review the instructions as given in their entirety to see if the law is acceptably explained prior to making judgment as to possible error. *Kinsey v. State*, 798 P.2d 630 (Okl.Cr.1990); *Ashinsky v. State*, 780 P.2d 201 (Okl.Cr.1989); *DeVaughn v. State*, 717 P.2d 1153 (Okl.Cr.1986).

We considered a similar question in *Brown v. State*, 777 P.2d 1355, 1358 (Okl. Cr.1989), where the trial court failed to give the uniform instruction defining "altercation" in connection with the other instructions on self-defense. In *Brown*, we

---

**4.** The Tenth Circuit held that a instruction should have been given which would have informed the jury that the Government had a "special burden when a heat of passion defense is raised." 776 F.2d at 921. When heat of passion is raised as a defense in a federal murder case, the jury must be instructed that "the prosecution must prove beyond a reasonable doubt the absence of heat of passion in order to obtain a conviction for murder."

held that although error occurred when the term was not specifically defined for the jury, reversal of the conviction was not required because the term was self-explanatory.

We find the same to be true under the facts of the instant case. The "provocation" involved here came from Wickham's involvement with Appellant's wife. To the extent that this would have or could have constituted adequate provocation, under the ordinary meaning of the word, the activity involved was far from subtle. We do not find that the jury was mislead or uninformed as to their responsibility under the law with respect to consideration of adequate provocation.

■■ In his fifth assignment of error, Appellant claims that error occurred when the trial court allowed the jury to separate between the two stages of the trial in violation of 22 O.S. 1981, § 857. We do not find that the provisions of Section 857 apply to the facts of this case.

At issue here is whether the trial court erred when it allowed the jury to leave for the day *following* its return of a guilty verdict in the first stage of the trial. Section 857 provides that the jury must be sequestered between hearing the charge and returning a verdict. In this case, at the time the jury was allowed to go home, there was no "charge" pending and no reason for the statutory isolation of the jury. The verdict as to the first stage of the trial had been returned and the second stage had not yet begun. Appellant fails to cite authority which would distinguish this situation from any other trial day during which no deliberations occurred. No error is identified here.

■■ As his final allegation of error, Appellant claims that the trial court committed error when it overruled his request to waive bifurcation of the proceedings and have the entire trial in one stage rather than two, notwithstanding the fact that no bill of particulars had been filed against him. The trial court held that bifurcation was mandated under 21 O.S. 1981, § 701.-10. Appellant claims that this statutory section should be applicable only to cases

involving the death penalty or previous offenses and that to apply the rule in his case where neither consideration is relevant is a violation of due process.

Our problem in this case arises due to legislative changes in the sentencing statutes which establish the penalties for First Degree Murder. In 1987, 21 O.S., § 701.9 was amended to include the additional punishment option of life without parole, along with life imprisonment or death. Prior to the amendment, when the crime alleged was murder, when the State elected not to file a bill of particulars indicating that the death penalty would be sought, then the only punishment possible was a life sentence. The sentence was assessed in a single stage proceeding. Following the amendment, sub-section A of 21 O.S. 1981, § 701.10 was changed to provide:

Upon conviction or adjudication of guilt of a defendant of murder in the first degree, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without parole or life imprisonment. The proceeding shall be conducted by the trial judge before the same trial jury as soon as practicable without presentence investigation. (Emphasis added.)

Sub-section (C) of the same section was not changed:

In the sentencing proceeding, evidence may be presented as to any mitigating circumstances enumerated in Section 701.7 *et. seq.* of this title. Only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible.

The dichotomy created by the conjoint application of these two statutory sections in a non-capital case is clear: although two sentencing options exist, the State is not entitled to introduce evidence in a second stage proceeding except as supports the enumerated aggravating circumstances which support the imposition of the death penalty.

When no aggravating circumstances are alleged, under the statute, the State may

not introduce any evidence in the punishment stage of the proceedings. If the State is not allowed to present evidence, then this portion of the trial is not a meaningful, adversary proceeding. Certainly, the legislature did not intend to create a second stage limited to evidence offered in mitigation alone. We find this result to be incongruous with a reasonable interpretation of the statutes. *State ex. rel. Hicks v. Freeman,* 795 P.2d 110, 112 (Okl.Cr.1990). *See also Berry v. State ex. rel. Oklahoma Public Employees Retirement System,* 768 P.2d 898 (Okl.1988); *In re Porky's Jungle Co.,* 813 P.2d 549 (Okl.App.1991).

 In our view, the better reading of these statutory sections makes them applicable *only* in capital murder cases. If the State is not seeking the death penalty and there are no previous convictions [5], then we find that bifurcation is not required. This result is a logical application of the applicable statutes, and in our view, appropriately carries out legislative intent.

We now turn to a consideration of the error alleged in this case; that the trial court committed error when it directed a two stage proceeding with respect to sentencing notwithstanding the fact that no aggravating circumstances were alleged. Our conclusion is that error did occur, however, based on our review of the actual proceedings, we are unable to conclude that the error was harmful.

During the second stage of the trial, the prosecutor introduced only a judgment and sentence reflecting a previous crime, the existence of which Appellant had admitted during his testimony in the first stage. No other evidence was offered and Appellant received the lightest of the two possible punishments. Based on this, we cannot conclude that any remedial action by this Court is required. We will not modify or reverse a sentence or a conviction unless we find not only error, but some prejudicial effect resulting from that error. *Harrall v. State,* 674 P.2d 581, 584 (Okl.Cr.1984). *See also Hall v. State,* 762 P.2d 264 (Okl.Cr.1988); *Gates v. State,* 754 P.2d 882 (Okl.Cr.1988).

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is AFFIRMED.

BRETT and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in result.

LUMPKIN, Vice–Presiding Judge: concurring in results.

I concur in the results reached by the court and agree that 21 O.S.Supp.1987, § 701.9 requires a bifurcated trial only when the death penalty is sought by the State. However, I cannot join in an analysis of "heat of passion", as it applies to Oklahoma statutes and jurisprudence when the discussion is supported only by federal caselaw interpreting federal statutes. The issue raised requires interpretation of Oklahoma statutes and prior decisions of this Court. While those decisions may embrace concepts which require analysis of federal constitutional law, we should not abdicate the responsibility or necessity to address independent State questions based on an interpretation of our State statutes.

---

5. Bifurcated proceedings may also be authorized under 22 O.S. 1981, § 860.