**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Darren Jay DENNISON,**
**Defendant–Appellant.**

**No. 89–2203.**

United States Court of Appeals,
Tenth Circuit.

July 1, 1991.

insufficient evidence of hostility to support such an award.

Teresa E. Storch, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Robert J. Gorence, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LOGAN and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Darren Jay Dennison, an Indian, was convicted after a jury trial of the following crimes committed in Indian country: aggravated sexual abuse, assault with a deadly weapon with intent to do bodily harm, assault resulting in serious bodily injury, and burglary, in violation of 18 U.S.C. §§ 1152, 1153, 2241(a), 113(c) & (f), 13, and N.M.Stat.Ann. § 30–16–3. Defendant now appeals, raising several issues as to the validity of his conviction and the proper guidelines sentencing range.

## I

Defendant encountered Elizabeth Lewis and Pamela Hartsoch one evening while working as a waiter at Red's Steakhouse in Espanola, New Mexico. The three, along with Ismael Trujillo, eventually went to Lewis' home where they consumed several beers. Defendant, Trujillo, and Hartsoch also shared some marijuana and cocaine. Defendant and Trujillo left Lewis' home at approximately 3:30 a.m. Hartsoch remained to sleep on the couch.

Defendant returned about fifteen minutes later, requesting to be let back in, which Lewis refused. Some time later, Hartsoch awoke and found defendant standing over her. She yelled and defendant ran into Lewis' bedroom. Defendant, wearing a white shirt and no pants, then climbed on top of Lewis and began cutting on her throat with a knife while ordering her to remove her clothes. Hartsoch entered the room but left after being told by Lewis, upon defendant's orders, that she was all right.

Lewis pulled down her underwear, but started screaming and fighting when she felt defendant becoming sexually excited. Hartsoch reentered the room and commenced struggling with defendant. Defendant cut Hartsoch several times before running off. The police arrested defendant that same morning.

Defendant was tried before a jury and found guilty of aggravated sexual abuse of Lewis, assault of Lewis and Hartsoch with a deadly weapon with intent to do bodily harm, assault of Lewis resulting in serious bodily harm, and burglary of Lewis' residence. Defendant was acquitted of the charge of assault of Hartsoch resulting in serious bodily harm. The district court sentenced defendant under the sentencing guidelines to 240 months imprisonment. On appeal, defendant contends that (1) the evidence adduced at trial was insufficient to prove, beyond a reasonable doubt, that Lewis' injuries constituted serious bodily injury; (2) defendant was denied due process when (a) the trial court refused to instruct the jury on his theory of defense, (b) the trial court refused to instruct the jury on lesser included offenses, and (c) the trial court restricted the testimony of his expert witness; (3) the trial court erred in allowing the government access to defendant's expert's notes; and (4) the trial court erred in refusing to give defendant a two point reduction in base offense level for acceptance of responsibility.

## II

Defendant first contends that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that Lewis suffered serious bodily injury within the meaning of 18 U.S.C. § 113(f). Defendant argues that Lewis' injuries were minor and not a "serious bodily injury" as that term was defined in the jury instructions given by the district court.[1]

█ In considering an insufficiency of the evidence claim, a court must examine all the evidence presented to the jury,

---

1. Defendant does not challenge the substance of the instruction given.

"both direct and circumstantial." *United States v. Culpepper*, 834 F.2d 879, 881 (10th Cir.1987). Then, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational [jury] could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

■ In the instant case, the district court instructed the jury that serious bodily injury means "bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." I R. tab 46, inst. 13. At trial, evidence of Lewis' injuries was presented through the testimony of Lewis and her treating physician after the assault, Dr. Lawrence Bell. Bell testified that Lewis had seven lacerations on her face, neck and right upper chest, several of them over the major arteries and veins that go to the brain. VI R. 143. He said that they were "relatively superficial, widespread," but that absent medical treatment, she would have been at risk of infection or aggravated scarring. *Id.* at 143–44. Lewis testified that she received forty-eight butterfly sutures to the neck. The lacerations actually produced scars on her neck and chest which she showed to the

jury. V R. at 40–41. Based on this evidence, we conclude that a rational jury could find beyond a reasonable doubt that Lewis' injuries involved a "substantial risk of ... protracted and obvious disfigurement." [2]

## III

■ Defendant next argues that he was denied his due process right to a fair trial when the district court refused to instruct the jury on the definition of specific intent and the effects of mental illness on the ability to form specific intent.[3] Specifically, defendant contends that the testimony by his psychologist concerning his mental state was sufficient to warrant specific instructions on the defense of mental illness.

"A criminal defendant is entitled to jury instructions on any theory of defense finding support in the evidence and the law." *United States v. Lofton*, 776 F.2d 918, 919–20 (10th Cir.1985). The trial judge, however, "is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented." *United States v. Pack*, 773 F.2d 261, 267 (10th Cir.1985). "[A]n abuse of discretion occurs only when the failure to give a requested instruction serves to prevent the jury from considering the defendant's defense."

---

**2.** In a footnote to his brief, defendant also argues that the district court erred in not granting his motion to supplement the record with a current photograph of Lewis. Without a renewed request in this court, with a photograph we may examine, we cannot find this ruling to be an abuse of discretion.

**3.** Defendant's instruction NN–1 was offered as follows:

"The crimes charged in Counts I, II, III, and VI are serious crimes which require proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

An act or a failure to act is 'knowingly' done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason."

I R. tab 44. Defendant's offered instruction B–1 stated in pertinent part:

"It is the duty of the jury to consider all the evidence in the case which may aid determination of state of mind, including all evidence offered on the issue of whether defendant suffered from mental illness, in order to determine whether the defendant acted or failed to act with specific intent, as charged in Counts I, II, III, and VI of the indictment.

If the evidence in the case leaves the jury with a reasonable doubt whether the mind of the accused was capable of forming, or did form, specific intent to commit the crimes charged, the jury should acquit the accused of that version of the offense which requires proof of specific intent."

*Id.*

*United States v. Hunt,* 794 F.2d 1095, 1097 (5th Cir.1986).

In the instant case, defendant asserts that he adequately raised a mens rea defense through the testimony, of Dr. Ed Siegal. Siegal testified that alcohol consumption by a person suffering borderline personality disorder like defendant causes mental deterioration manifesting itself in the form of a psychosis or anti-social behavior.[4] The district court, however, refused to give a separate instruction on mental illness and specific intent, ruling that defendant's defense was adequately covered in other instructions.[5]

After examining the record and the instructions as a whole, *see Lofton,* 776 F.2d at 920, we hold that the district court's instructions properly characterized the law and evidence and adequately instructed the jury on defendant's mental illness defense. The thrust of the defense was not that defendant's mental illness alone negated his ability to form specific intent. His defense was that a person with borderline personality disorder who becomes intoxicated cannot form specific intent.[6] VI R. at 228–32. Under the court's intoxication instruction, the jury could consider evidence of defendant's mental illness in determining "the degree of [defendant's] intoxication" and whether he "was capable of forming ... specific intent." I R. tab 46, inst. 24. Accordingly, the district court did not err in refusing to give a separate instruction on specific intent and mental defect. The instructions given, when read together, adequately "advised [the jury] of the defendant's position so as to put the issues raised by the theory of defense squarely before it." *Lofton,* 776 F.2d at 920.

## IV

Defendant's third point of error is that the district court abused its discretion in refusing to instruct the jury on lesser included offenses. Under count I, aggravated sexual abuse of Lewis, defendant requested an instruction on sexual contact by use of a deadly weapon resulting in personal injury. *See* 18 U.S.C. § 13 and N.M.

---

**4.** Dr. Siegal described persons diagnosed with borderline personality disorder as having the following characteristics: inability to identify with themselves or others, excessive behavior, and susceptability to extreme fits of rage and anger. VI R. at 224–26.

**5.** Those instructions included language from the indictment, a list of the requisite elements for each crime, *see* I R. tab 46, insts. 4, 6, 11, 14, 16, and 21, and the following instructions:

"To attempt an offense means willfully to take some substantial step in an effort to bring about or accomplish something the law forbids to be done. Something more than mere preparation or planning is required.

The word 'knowingly' as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident or other innocent reason.

Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind.

You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. As I have said, it is entirely up to you to decide what facts to find from the evidence.

Although intoxication or drunkenness alone will never provide a legal excuse for the commission of a crime, the fact that a person may have been intoxicated at the time of the commission of a crime may negate the existence of a specific intent.

So, evidence that a defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the defendant acted, or failed to act, with specific intent, as charged.

If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of his intoxication, the mind of the accused was capable of forming, or did form, specific intent to commit the crime charged, the jury should acquit the accused."

I R. tab 46, insts. 22–24.

**6.** In fact, Dr. Siegal testified that although defendant was suffering from borderline personality disorder, he was in remission (i.e., suffering no symptoms) before his encounter with Lewis and Hartsoch. VI R. at 228. He then discussed the effects of alcohol on the mental state of normal individuals and those in remission from a borderline personality disorder. *Id.* at 228–32. Siegal testified that a person in remission returns to an active state if intoxicated. *Id.* at 232.

Stat.Ann. § 30–9–12. Under counts II and III, assault of Lewis and Hartsoch with a deadly weapon with intent to do bodily harm, and count IV, assault of Lewis resulting in serious bodily injury, defendant requested an instruction on assault by striking, beating, or wounding under 18 U.S.C. § 113(d). Finally, under count VI, residential burglary, defendant requested an instruction on unauthorized breaking and entering. *See* 18 U.S.C. § 13 and N.M. Stat.Ann. § 30–14–8(A). The district court, however, only instructed the jury on the lesser offense of abusive sexual contact, 18 U.S.C. § 2244, in connection with the aggravated sexual abuse charge.

■ "In a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justif[ies] it, [is] entitled to an instruction which would permit a finding of guilt of the lesser offense." *Berra v. United States*, 351 U.S. 131, 134, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956). *See also* Fed.R.Crim.P. 31(c); *Beck v. Alabama*, 447 U.S. 625, 635–36 n. 11, 100 S.Ct. 2382, 2388–89 n. 11, 65 L.Ed.2d 392 (1980) (Rule 31(c) is "universally interpreted as granting a defendant a right to a requested lesser included offense instruction if the evidence warrants it."). Specifically, a lesser included offense instruction is warranted if: (1) there has been a proper request; (2) the lesser offense includes some, but not all, of the elements of the offense charged; (3) the element differentiating the two offenses is in dispute; and (4) a rational jury could convict the defendant of the lesser included offense and acquit of the greater offense. *Fitzgerald v. United States*, 719 F.2d 1069, 1071 (10th Cir.1983).

■ After reviewing the evidence, we are satisfied that the district court correctly concluded that the jury could not have rationally convicted defendant of the lesser offenses on which it refused to instruct and acquitted on the greater. Essentially all of these lesser included offense instructions were predicated upon defendant's alleged incapacity to form specific intent. We believe the evidence of aggravated sexual abuse or attempted rape was such that no rational jury could have convicted defendant of only criminal sexual contact. Defendant entered Lewis' room without his pants, with a knife in his hand, climbed on top of her, and ordered her to remove her underwear. Lewis felt defendant's erection and was told to tell her inquiring friend that she loved defendant—all while defendant was continually using the knife to cut on her throat. Similarly, the evidence supporting defendant's convictions for assault with a deadly weapon with intent to do bodily harm and residential burglary was overwhelming. Defendant entered the house through a window after removing a screen. He cut Lewis several times while ordering her to remove her clothes and threatening to kill her if she did not do as he said. Defendant cut Hartsoch in an attempt to further his escape. He left his shoes at the back door of the house and he had no pants on when he entered Lewis' bedroom. Given these facts, a reasonable jury would have to conclude that he entered the residence with intent to commit more than the lesser offenses for which defendant sought instructions, if defendant had the mental capacity to commit any crime at all.

V

■ Defendant next argues that the district court erred in restricting the testimony of his expert, Dr. Ed Siegal. Defendant proffered Siegal's opinion that an individual suffering from borderline personality disorder, under the influence of drugs and alcohol, does not have the capacity to form specific intent.[7] The district court rejected

7. The proffered testimony is reflected in the following exchange:

"Q. And what effect does alcohol and drugs have upon a person who is suffering from borderline personality disorder, that person's capacity to plan, deliberate and so forth?

A. Well, it depends on the amount of drugs or alcohol they take, but in general we would expect them to decompensate, and their actions would become more the product of internal emotions.

Most predominantly with a borderline that predominant emotion would be rage....

defendant's proffer, stating that such testimony was prohibited by Fed.R.Evid. 704(b).

Rule 704(b) prohibits an expert from stating an opinion or inference on whether a defendant possessed the requisite mental state at the time of the crime.[8] Under 704(b), "expert psychiatric testimony [is] limited to presenting and explaining their diagnoses, such as whether the defendant had a severe mental disease or defect and what the characteristics of such a disease or defect, if any, may have been." S.Rep. No. 225, 98th Cong., 2d Sess. 230 (report on Comprehensive Crime Control Act of 1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3412.

We conclude that the district court did not abuse its discretion in excluding the offered portion of Dr. Siegal's testimony. His testimony—that alcohol and drug consumption by a person with borderline personality disorder renders that person incapable of forming specific intent—is the type of opinion or inference testimony Rule 704(b) is intended to exclude. Although Dr. Siegal's testimony was premised on a hypothetical person suffering borderline personality disorder and couched in terms of the characteristics of the illness itself, the necessary inference was that the instant defendant did not have the capacity to form specific intent at the time of his crimes because of the combined effects of his intoxication and mental illness. Under

Rule 704(b) such an inference is for the jury to make, not an expert witness. *See United States v. Hillsberg*, 812 F.2d 328, 331–32 (7th Cir.), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

## VI

■ Defendant contends that the district court erred in allowing the government access to Dr. Siegal's notes before its cross-examination. He argues that disclosure was unwarranted under Fed.R.Crim.P. 16(b)(1)(B) and 16(b)(2) because the notes are not reports or results of physical or medical examinations. We agree.

Rule 16(b)(1)(B) provides:

"If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the government, the defendant, on request of the government, shall permit the government to inspect and copy or photograph any results or reports of physical or mental examinations...."

Fed.R.Crim.P. 16(b)(1)(B). Rule 16(b)(2) provides, however, that certain information is not subject to disclosure:

"Except as to scientific or medical reports, this subdivision does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant, or the

---

Q. So what does that say if the basis of the reaction is rage in that instance, what does that say concerning that person's ability to plan and specifically intend the consequences of their actions?
A. Well, what it really means is that they are not as able to take into account all the factors one generally takes into account. Some predominant emotion, such as rage, would overwhelm them and they would act solely on the basis of that, and do something where if their were [sic] ego more intact or were they under less stress, than they would otherwise do.
Q. When you say that their actions are based solely on that rage, then, are you saying, then, that their actions are not based upon planning and deliberate action?
A. Well, again, planning and deliberate actions are one of the cognitive elements of it and suggesting that when a person decompensates that something beyond cognitive takes over and motivates them, pushes them, so their capacity to think is not what it would

otherwise be, again using like Fatal Attraction....
Q. Does that tell you anything about a person's ability to form specific intent?
A. Well, as a general rule, what that means is that where that is shown to be the case, that their capacity to form specific intent as we know it is not—is no good.
Q. So are you saying that they do not have the capacity?
A. Well, they are robbed of that capacity."
VI R. at 265–267.

8. Specifically, Rule 704(b) provides:

"No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."
Fed.R.Evid. 704(b).

defendant's attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by government or defense witnesses, or by prospective government or defense witnesses, to the defendant, the defendant's agents or attorneys."

Fed.R.Crim.P. 16(b)(2).

■ In the instant case, Dr. Siegal's notes on his discussions with defendant cannot be considered a medical *report* or *result* within the meaning of Rules 16(b)(1)(B) and 16(b)(2). A medical report is an official statement of facts concerning a patient's condition; a medical result is a conclusion derived from facts gleaned during an examination. *See United States v. Iglesias,* 881 F.2d 1519, 1523 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1154, 107 L.Ed.2d 1057 (1990). The materials turned over to the government here were verbatim notes taken from defendant's responses to Dr. Siegal's questions—notes that were "the raw material upon which a result or report—if [the doctor] were to prepare one—would be based." *United States v. Layton,* 90 F.R.D. 520, 522 (N.D. Cal.1981) (tape recordings of defendant's psychiatric interviews did not constitute a medical report or result). *Accord Iglesias,* 881 F.2d at 1523–24. We view such notes as nondiscoverable statements made by the defendant to his agent in connection with his defense. *See Layton,* 90 F.R.D. at 524.

■ The government contends that disclosure was necessary to enable meaningful cross-examination of Siegal. We disagree. The notes contain no results, conclusions, diagnoses or summations; they simply record defendant's thoughts and actions the night of the incident. Moreover, the government did not use the notes to challenge Dr. Siegal's opinion of defendant's mental condition. Instead, the prosecutor merely quoted defendant's statements to the jury through his questioning of Dr. Siegal. Under these circumstances, we fail to see why disclosure was necessary.

■ Although the district court erred in permitting the government access to Dr. Siegal's notes, we find such error to be harmless. Defendant may have had a constitutionally protected right of privacy in this case, *see Pesce v. J. Sterling Morton High School,* 830 F.2d 789, 795–98 (7th Cir.1987), but under the harmless-error standard articulated by the Supreme Court in *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 1263–66, 113 L.Ed.2d 302 (1991), and *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), we are convinced, beyond a reasonable doubt, that disclosure of the notes did not affect the outcome of the trial.

## VII

■ Finally, defendant contends that the district court should have given him a two-point reduction in his guidelines offense level for acceptance of responsibility. Defendant argues that a two-point reduction was warranted "because throughout the course of his case, he admitted general intent culpability for his offense—that he committed the charged actions, and possessed the general intent to do so." Appellant's Brief-in-Chief at 47.

■ A defendant is entitled to a two-point reduction in offense level if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." U.S.S.G. § 3E1.1(a). A district court's determination under § 3E1.1(a) is a question of fact reviewed under the clearly erroneous standard. *United States v. Spedalieri,* 910 F.2d 707, 712 (10th Cir.1990); 18 U.S.C. § 3742(e). Such a determination "is entitled to great deference ... and should not be disturbed unless it is without foundation." U.S.S.G. § 3E1.1 comment. (n.5). *Accord United States v. Pelayo–Munoz,* 905 F.2d 1429, 1431 (10th Cir.1990).

In the instant case, defendant did not accept responsibility for the crimes charged before or during trial or in his presentence report. His first acknowledgement of responsibility came at the sentencing proceeding. The district court found this acceptance untimely, stating, "If I were to accept that as acceptance of responsibility, then the whole process is meaningless until

we get to the time of sentencing and you simply file a statement saying I accept responsibility." IV R. at 11. We conclude that the district court did not abuse its discretion in denying the two-point reduction.

AFFIRMED.