974 F.2d 1346
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Richard ABEITA, Defendant-Appellant.
 No. 90-2259.
 United States Court of Appeals, Tenth Circuit.
 Aug. 12, 1992.
 
 1
 Before SEYMOUR and EBEL, Circuit Judges, and MATSCH, District Judge*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 RICHARD P. MATSCH, District Judge.
 
 
 4
 The first issue is whether this court has appellate jurisdiction under 28 U.S.C. § 1291 over allegations of trial error. Upon verdicts of guilty to counts II and IV of the indictment, the defendant was sentenced to imprisonment on November 2, 1990. The written judgment was filed November 8, 1990, and entered on the docket on November 9, 1990. A motion for new trial based on allegations of newly discovered evidence was filed on Nobember 15, 1990. The notice of appeal was filed November 19, 1990. The motion for new trial was denied by an order entered November 28, 1990. Thus, the notice of appeal was filed while the motion for new trial was pending. Since that motion extended the time for filing the notice of appeal under Appellate Rule 4(b), the filing was premature. This court has held that the filing of a notice of appeal after a guilty verdict, but before sentencing, does not divest the court of jurisdiction and that the notice "ripens" upon sentencing. United States v. Walker, 915 F.2d 1463, 1465 (10th Cir.1990). The Ninth Circuit Court of Appeals ruled that a motion for new trial filed on the date of sentencing did not deprive the court of jurisdiction. United States v. Cortes, 895 F.2d 1245 (9th Cir.1990). Considering those cases, and Rule 52 of the Federal Rules of Criminal Procedure, with no showing of prejudice to the government, this court concludes that it has jurisdiction to review the allegations of trial error under 28 U.S.C. § 1291 and in sentencing under 18 U.S.C. § 3742(a)(1) and (2). While a second notice of appeal was not filed after denial of the motion for new trial, we review that denial upon the reasoning expressed in United States v. Burns, 668 F.2d 855 (5th Cir.1982).
 
 
 5
 The defendant was charged with four counts of assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(c) and 1153. The charges alleged assaults on four different people on the same date. They arose out of fighting involving eight or nine people at the defendant's place of business, the Putt-Putt, a recreation hall on the Isleta Pueblo, on the night of October 15, 1989. The jury found the defendant not guilty of alleged assaults on Kenneth Zuni and James Jaramillo and guilty of assaults on James Jojola and Anthony Gatewood.
 
 
 6
 The evidence at trial was both conflicting and confusing. It is clear that most of the participants in the fighting had been drinking alcoholic beverages and were in varying states of intoxication. The critical factual question was whether the defendant acted in self defense in an effort to stop the fighting. The government's theory of prosecution was that the fighting had ended and the defendant attacked the four victims in retaliation.
 
 
 7
 The defendant testified at his trial. He said that Kenneth Zuni, James Jaramillo, Anthony Gatewood and James Jojola were attacking Sonny Trujillo and Thomas Abeita. Richard Abeita said that he tried to stop the fighting and hit the side of a pool table with a baseball bat to get the attention of the combatants. The defendant said that the bat was taken from him and that he was struck and rendered unconscious by a blow with the bat delivered by Kenneth Zuni. Richard Abeita testified that he had no memory of the events which occurred after he was knocked out. Thus, he could not testify about the events forming the bases for the charges. That denial of memory was challenged by cross-examination on prior statements of the defendant. The victims gave direct testimony concerning attacks on them by the defendant using a shotgun as a club.
 
 
 8
 At the close of the direct examination, the defendant denied any previous fights of this severity at his place of business in the following exchange with his counsel:
 
 
 9
 Q. Mr. Abeita, were you afraid when all this was going on?
 
 
 10
 A. Oh, yes, I was. I've been there over seventeen years and I've never had an incident like this before.
 
 
 11
 Q. Okay; what did you--what were you afraid of?
 
 
 12
 A. I was afraid that someone would get hurt. I was afraid that Thomas and Brian would be seriously hurt. They were crying actual crying like young kids. And I was afraid--after they wouldn't stop fighting, then I--I was afraid for myself.
 
 
 13
 Q. Okay.
 
 
 14
 (Tr.Vol. II at 312)
 
 
 15
 On cross-examination, the prosecutor asked Abeita the following:
 
 
 16
 Q. Mr. Abeita, you indicated, sir, that ... you were in fear because you had never had an incident take place at the Putt-Putt before, was that your testimony, sir?
 
 
 17
 A. Yes, it is.
 
 
 18
 ....
 
 
 19
 Q. Sir, isn't it true that the Putt-Putt is well known for a lot of incidents happening similar to the incident that happened on October 15th?
 
 
 20
 A. No.
 
 
 21
 Q. Isn't it true, sir, that the police department prior to October of '89 when this particular incident occurred, that they had gone to the Putt-Putt on numerous occasions, or received calls on numerous occasions regarding fights occurring at the Putt-Putt, isn't that correct, sir?
 
 
 22
 A. No, it's not.
 
 
 23
 Q. Are you telling me, sir, that this is the first time that a fight has ever occurred at the Putt-Putt, October 15th of last year?
 
 
 24
 A. That type of fight, that serious type of fight. There have been several over the past seventeen years where one person hit another, but that's about it. I have never had a--if you want to check the police records, I have never had one incident, over seventeen and a half years, that I've had the police at the Putt-Putt.
 
 
 25
 Q. Where you have had the police--you've never had the police at the Putt-Putt before?
 
 
 26
 A. I've never had the police at the Putt-Putt.
 
 
 27
 (Tr.Vol. II at 313-314).
 
 
 28
 After completion of cross-examination of the defendant, the prosecutor informed the court and defendant's counsel, at a hearing outside the presence of the jury, that the government intended to offer incident reports from the Isleta Police Department regarding fighting at the defendant's place of business before the date of the offense. Defense counsel objected that these reports would be improper impeachment because they related to collateral acts not material to the issues in the case. The court reviewed the reports and found that only a report of July 8, 1984, concerned fighting at the Putt-Putt. The court ruled that this report would be admissible to impeach the credibility of the defendant's denials made on cross-examination.
 
 
 29
 Accordingly, the government called the FBI agent who investigated the case to testify that he had reviewed police documents and found that on July 8, 1984, Isleta Police Department officers responded to a fight in progress call at the Putt-Putt Bar. On cross-examination, the agent testified that the subject report showed a response to a call from an unknown female concerning a fight in progress and that when the police officers arrived no one was there except Richard Abeita who said that there was no fight.
 
 
 30
 The government also called Officer Ron Trujillo from the Isleta Police Department to testify that he had personally responded to calls of fights in progress at the Putt-Putt three times. On cross-examination, Officer Trujillo said that reports were generated but he did not have them with him; that he did not remember the dates; that Richard Abeita was present on one occasion and that the witness did not know if Richard Abeita was involved in the fighting.
 
 
 31
 In his closing argument, the prosecutor made the following comment:
 
 
 32
 And the fact that there was a fight there, ladies and gentlemen, is nothing that should have been a surprise to anybody there, much less the defendant himself, although he came up here and told you that in seventeen years that he's run that Putt-Putt, there's never been a fight there like the one before. That the police never had to respond to a fight there, and that simply was not true. There's no other way to state that. It simply was not true.
 
 
 33
 You heard the testimony of Mr. Lauck, who presented a--who testified as to an Isleta Police Department report regarding a prior fight incident. You heard the testimony of Officer Trujillo, who came in here and said, of his own personal recollection in the last couple of years that he's been at Isleta, he has personally responded prior to October of '89 to three other fight incidents occurring at the Putt-Putt.
 
 
 34
 (Tr.Vol. II at 374-375)
 
 
 35
 In his rebuttal argument, the government's counsel said:
 
 
 36
 You got about nine guys, nine witnesses who have come here under oath and told you that. Then you got Richard here saying I never had a problem at the Putt-Putt before. The police have never responded at the Putt-Putt before.
 
 
 37
 He's under oath and he's lieing [sic] to you. And he's not on trial for those past incidents, but you have to take those into account because part of your job, ladies and gentlemen, is deciding who's credible here. Who is credible.
 
 
 38
 And that is the reason, that is the reason why those issues come up. He came up here under oath and he told you, after I got hit, I don't remember anything.
 
 
 39
 (Tr.Vol. II at 397)
 
 
 40
 Rule 608(b) of the Federal Rules of Evidence reads as follows:
 
 
 41
 (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
 
 
 42
 The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.
 
 
 43
 The appellant contends that the court's admission of the testimony of Agent Lauck and Officer Trujillo was error because that testimony constituted extrinsic evidence of specific instances of conduct for the purpose of attacking the defendant's credibility. This specific objection was not made to the trial court. What defense counsel said at the hearing outside the presence of the jury was that the attack on credibility should be limited to material facts. Evidentiary rulings are reviewed for an abuse of discretion. United States v. Alexander, 849 F.2d 1293, 1301 (10th Cir.1988). When specific objections are not made at trial, they may be considered on appeal only if there is plain error. United States v. Nall, 949 F.2d 301, 309 (10th Cir.1991).
 
 
 44
 Rule 608(b) is not applicable. The extrinsic evidence which was introduced was not evidence concerning the defendant's conduct in participating in fighting. It was some contradiction of the defendant's denial that police had previously been called to the Putt-Putt. There was no testimony that the defendant was fighting. The fact of prior reports of fighting had some relevance because of the defendant's statement on direct examination that he was afraid because he never had an incident like this before and his volunteered amplification of that statement that he never had the police at the Putt-Putt in over 17 1/2 years.
 
 
 45
 Admittedly, the government's rebuttal evidence was weak. Indeed, there was a failure to support the implication from the prosecutor's cross-examination questions that the police had gone to the Putt-Putt on numerous occasions or received calls on numerous occasions concerning fighting at that location. The defendant has, on appeal, argued that the cross-examination was irrelevant and outside the scope of direct examination. Those objections were not made during the cross-examination. Additionally, the defendant now claims that the prosecutor did not have a good faith basis for that questioning. Again, no such objection was made to the trial court and there was no motion to strike or a request for a limiting instruction. The only pertinent objection appearing in the trial transcript was that made at a hearing outside the presence of the jury on the government's proffer of the testimony of the FBI agent and tribal police officer that this would be improper impeachment on prior acts not going to a material issue in the case. When asked by the court about admissability on the issue of credibility, defendant's counsel simply asserted that impeachment must be limited to a material fact. Similarly, the defendant did not make a hearsay objection during the rebuttal testimony. Thus, the matters now urged as reversible error were not properly presented to the trial court. No plain error was made in these rulings.
 
 
 46
 The defendant claims error in the denial of his motion for new trial based on newly discovered evidence. The court denied that motion without a hearing and without providing any statement of reasons. While the denial of a motion for new trial is reversible only for an abuse of discretion, United States v. Sutton, 767 F.2d 726, 728 (10th Cir.1985), when the record does not disclose the bases upon which the trial court acted, this court must evaluate the defendant's proffer to determine whether he met the four part test of United States v. Ramsey, 726 F.2d 601, 604 (10th Cir.1984).
 
 
 47
 Thomas Abeita and Sunny Trujillo were witnesses at the trial. After the trial they gave a joint statement to defendant's counsel, modifying their testimony. In that statement, they said that they participated in fighting after Richard Abeita was struck and after they helped him up. They indicated that during the fight the defendant did not touch anybody but simply stood against the building, holding his head. They further reported that they did not testify in that manner at trial because they were intimidated by the FBI, tribal police and the assistant district attorney. This "joint statement" appears to be a summary and while there are signatures to it, apparently by the witnesses, they are not affidavits or sworn testimony. The trial judge obviously concluded that these were not recanting statements. There was no abuse of discretion in reaching that conclusion.
 
 
 48
 The defendant has also offered statements of Thomas F. Lente and Jose R. Lucero as new witnesses who did not testify at the trial. They said that they saw fighting but did not see Richard Abeita participate in it. These were not sworn statements. Accepting them as true, they do not negate the guilt of the defendant. At best, their opportunity for observation was limited in time. At any rate, the defendant has not shown sufficient justification for the failure to produce these witnesses at the trial. He states only that because they were passers-by, their presence was not known to the participants. That is an insufficient showing.
 
 
 49
 The final claim of error is that the trial court refused to grant the defendant a two level reduction in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The defendant points out that at the sentencing hearing the court made the following statement: "I do not agree that Mr. Abeita's entitled to a reduction for admission of responsibility, and I think--as I have stated before, the admission has to be made timely, and the fact that he stood trial and denied the substance of the charges, I don't see how that could ever possibly warrant a reduction under acceptance of responsibility." Tr.Vol. II, at 445. If the trial court rejected the request for reduction only because the defendant exercised his constitutional right to trial, there would be error in application of the guidelines. Section 3E1.1(b) and Application Note 2 make it clear that the exercise of a constitutional right to a trial by jury does not automatically preclude consideration of this section. What is required is some evidence of a recognition of personal responsibility for criminal conduct. U.S.S.G. § 3E1.1(a). The defendant has the burden of proof on this issue and great deference is given to the trial court's decision. United States v. Dennison, 937 F.2d 559, 566 (10th Cir.1991). In his pre-sentencing statement and in his allocution at the time of sentencing, the defendant continued to deny any recollection of the events which followed the blow to his head as he testified at trial and denied guilt. The defendant has failed to show in this record any support for the necessary findings. Accordingly, there was no error in this sentencing.
 
 Upon the foregoing, it is
 
 50
 ORDERED that the judgment is AFFIRMED.
 
 
 
 *
 The Honorable Richard P. Matsch, United States District Judge for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3