F I L E D
United States Court of Appeals
Tenth Circuit

SEP 8 1997

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellant/Cross-
      Appellee,

v.

TIMOTHY TSOSIE,

      Defendant-Appellee/Cross-
      Appellant.

Case No. 96-2084/96-2085

(D.C. CR-95-13 MV)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **HENRY**, and **LUCERO**, Circuit Judges.

     This appeal and cross-appeal arise from Defendant Timothy Tsosie's conviction under the Major Crimes Act, 18 U.S.C. § 1153, on one count each of assault with a dangerous weapon and assault resulting in serious bodily injury. After denying Timothy Tsosie's motions for a new trial and for judgment of acquittal, the district court sentenced him to a term of forty-six months--taking into account a two-level reduction in the offense level for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines. The

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

United States appeals the district court's award of the two-level sentence reduction. Timothy Tsosie cross-appeals the district court's denial of his motions for a new trial and for judgment of acquittal. In response, the government argues that this court lacks jurisdiction to consider Timothy Tsosie's cross-appeal because his notice of appeal was not timely. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**BACKGROUND**

On August 12, 1994, Timothy Tsosie and his brother Benjamin Tsosie set out from their home on the Navajo Reservation to attend a parade in Farmington, New Mexico, about six miles away. After pawning some tools at a trading post, the two hitch-hiked to Farmington, where they purchased a half-gallon of vodka. Instead of remaining in Farmington for the parade, the Tsosie brothers drove with the woman who had picked them up to nearby Morgan Lake where they drank vodka and malt liquor for about an hour. The woman then decided to leave and offered to drive the Tsosie brothers back to Farmington. En route, the Tsosie brothers decided to return home and the woman dropped them off at a roadside location within the reservation where they had previously obtained rides home.

While Benjamin attempted to hitch-hike, Timothy continued to consume the remaining vodka. After becoming frustrated, Benjamin walked over to Timothy and said,

"Let's go". Rec. vol. IV. at 167 (Testimony of Benjamin Tsosie dated Oct. 30, 1995). At that point, for no apparent reason, Timothy pulled a five-inch pocketknife out of a knife scabbard on his belt and began stabbing Benjamin. Benjamin attempted to defend himself and told his brother to stop. Timothy did not respond but, rather, continued stabbing Benjamin.

When Sergeant Kee of the San Juan County Sheriff's Office arrived sometime later, he found Benjamin bleeding and seriously injured and Timothy sitting nearby on a ditch bank. Timothy did not respond to Sergeant Kee's questioning. Due to the nature of Benjamin's wounds, the paramedics at the scene requested a helicopter and airlifted Benjamin to a hospital where he was treated for seven stab wounds.

Timothy was charged on one count of assault with a dangerous weapon, 18 U.S.C. §§ 1153, 113(c) (1988), and one count of assault resulting in serious bodily injury, 18 U.S.C. §§ 1153, 113(f) (1988),[1] occurring on an Indian Reservation. At trial, Benjamin testified to the events as described above, stating that Timothy "flips out" when he drinks alcohol. Rec. vol. IV. at 174. Timothy, on the other hand, while agreeing with Benjamin's account of the events up to the drinking at Morgan Lake, maintained that he blacked out from the drinking and only remembered waking-up in a trailer at a police station. The government's psychiatrist, who examined Timothy and testified to his

---

[1] The subsections of 18 U.S.C. § 113 under which Timothy was charged and convicted were amended in 1994. Therefore, for purposes of this appeal, we refer to those sections as they existed in the 1988 United States Code.

competency, acknowledged that both he and another psychiatrist concluded that Timothy suffers from a prior brain injury and possibly suffers from a mild amnestic disorder due to that injury and long-term alcohol abuse. The jury convicted Timothy on both counts. The district court subsequently denied Timothy's motions for a new trial and for judgment of acquittal.

At the sentencing hearing, Timothy made two statements relevant to his acceptance of responsibility. Upon introduction to the court, Timothy said: "I just want to say that I take responsibility for what I've done, even though I don't remember it." Rec. vol. VI at 17-18 (Sentencing Hearing dated Jan. 23, 1996). When asked by the court whether he wished to say anything additional, Timothy responded: "I'd like to say, like I said before, I was--I blacked out, just woke up with the side of the head with a bump on me inside a trailer. And I'm sorry what--for what happened. I didn't find out until later that it happened." Rec. vol. VII at 8-9 (Sentencing Hearing dated March 1, 1996). Based upon these statements and review of other statements and evidence in the record, the court determined that Timothy met the criteria for acceptance of responsibility under Sentencing Guidelines § 3E1.1, granting him a two-level reduction in the offense level. Timothy was sentenced to two concurrent terms of forty-six months' imprisonment.

## DISCUSSION

4

## I.  The Government's Appeal

The government appeals the district court's offense level reduction based on the court's finding that Timothy Tsosie accepted responsibility for his crime under Sentencing Guidelines § 3E1.1.  The government argues that the district court erred in finding facts sufficient to support a determination that Timothy had accepted responsibility for his crime.  Specifically, it argues that Timothy continually denied that he had done anything wrong and never made an effort to accept responsibility or to express remorse for his criminal acts.

The district court's determination of acceptance of responsibility is a question of fact that is reviewed under the clearly erroneous standard.  See United States v. Janus Industries, 48 F.3d 1548, 1559-60 (10th Cir. 1995).  Under this standard, the district court "has broad discretion to determine whether to award the reduction, and we will not disturb the court's decision absent clearly erroneous findings."  United States v. Gassaway, 81 F.3d 920, 922 (10th Cir. 1996).   As explained in the commentary to § 3E1.1, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.  For this reason, the determination of the sentencing judge is entitled to great deference on review."  U.S. Sentencing Guidelines Manual § 3E1.1, commentary n.5.

Section 3E1.1 allows a decrease of two offense levels for a defendant who "clearly demonstrates acceptance of responsibility for his offense."  U.S. Sentencing Guidelines

Manual § 3E1.1(a). In determining whether a defendant has clearly demonstrated acceptance of responsibility under § 3E1.1, the court must consider, among other things, whether the defendant has "truthfully admitt[ed] the conduct comprising the offense(s) of conviction." See id. at commentary n.1(a). Accordingly, we have held that to receive a reduction in his sentence, the defendant must show "'recognition and affirmative acceptance of personal responsibility for his criminal conduct.'" United States v. McAlpine, 32 F.3d 484, 489 (10th Cir. 1994) (quoting U.S. Sentencing Guidelines Manual § 3E1.1(a) (1987 version)).

The commentary to § 3E1.1 provides that a downward "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S. Sentencing Guidelines Manual § 3E1.1, commentary n.2. However, "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." Id.

Applying this standard, we conclude that the district court's two-level reduction in Timothy's offense level was not clearly erroneous. The court based its reduction in the offense level on Timothy's statements that, although he did not remember the events which had occurred, he accepted responsibility for the assault on his brother. We also

6

acknowledge that the court had the benefit of personally observing defendant's conduct throughout the trial and to weigh the sincerity of his statements.

While Timothy could not remember the events surrounding his assault on his brother, he admitted that the injury resulted from his conduct. Contrary to the government's argument, we find this situation to be distinguishable from the defendant's statement in United States v. Jaramillo, 98 F.3d 521 (10th Cir.), cert. denied, 117 S. Ct. 499 (1996), which we held insufficient to award an offense level reduction under § 3E1.1. In Jaramillo, after a recess granted by the judge to modify an earlier statement to a probation officer, the defendant stated: "The jury has found me guilty and I accept the jury's findings and therefore I am remorseful and I will accept responsibility." Id. at 526. In the present case, Timothy's statements were not perfunctorily based on the result of the jury's findings, but rather, on the recognition of his responsibility for the result of his actions which he could not directly recall or attest to at trial.

This case presents the unique situation where a defendant maintains a defense based on his diminished capacity to form the requisite intent for the crime and then seeks to accept responsibility for criminal conduct which he cannot recall. Although the jury chose not to accept Timothy's defense--a finding which we decline to overrule *infra* on Timothy's cross-appeal--we do not believe that the district court's grant of the acceptance of responsibility reduction based upon the facts of this case is inconsistent with the jury's conclusion. That a defendant may have had the specific intent to commit a crime <u>at the</u>

7

time of the act itself does not necessarily mean that that defendant, who suffers from some form of amnestic disorder, may not be able to remember what happened after the fact and fully take responsibility for those actions.

The very uniqueness of this situation underscores the reason for our deference to the district court; the credibility of this defendant's acceptance of responsibility can best be evaluated by the trial judge who personally observed the trial and defendant's statements and demeanor at trial and sentencing. Based on the record before us, we conclude that the district court's grant of a two-level reduction for acceptance of responsibility under § 3E1.1 was not clearly erroneous.

## II. Timothy Tsosie's Cross-Appeal

In response to the government's appeal, Timothy filed a cross-appeal challenging the district court's denial of his motions for a new trial and for judgment of acquittal. Prior to addressing the merits of Timothy's cross-appeal, however, we must address the government's contention that this court does not have jurisdiction over the cross-appeal because Timothy's notice of appeal was untimely.

The timing of the notice of the cross-appeal in this case is governed by Fed. R. App. P. 4(b), which provides that "[i]n a criminal case, a defendant shall file the notice of appeal in the district court within 10 days after the entry either of the judgment or order appealed from, or of a notice of appeal by the Government." The government filed the

8

first appeal in this case on April 9, 1996. The government's appeal was timely because it was filed within thirty days of the entry of the underlying judgment on March 11, 1996. Timothy filed his notice of appeal on April 12, 1996. Therefore, Timothy's cross-appeal was timely because it was filed within 10 days of the government's notice of appeal as required under Fed. R. App. P. 4(b).

Timothy argues on cross-appeal that the district court erred in denying his motion for a new trial and for judgment of acquittal. Timothy's arguments supporting the motions are the same on appeal as they were before the district court. First, he argues that his conviction for assault with a dangerous weapon was invalid because the government failed to prove the element of specific intent. Timothy claims he lacked the necessary specific intent because he "was so drunk at the time of the assault that he had blacked out." Aple's Br. at 28. Second, Timothy argues that his conviction for assault resulting in serious bodily injury was invalid because the government failed to prove that Benjamin suffered serious bodily injury.

We review the denial of a motion for judgment of acquittal using the same standard as the district court. United States v. Fleming, 19 F.3d 1325, 1328 (10th Cir. 1994). In order to determine whether the evidence was sufficient to support the jury's verdict, we ask only whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. United States v. Ivy, 83 F.3d 1266, 1284 (10th Cir.), cert. denied, 117 S. Ct. 253 (1996). To conclude that the evidence was insufficient, we must find that no

9

reasonable juror could have reached the disputed verdict. Id. We view all the evidence and the reasonable inferences therefrom in the light most favorable to the prosecution. United States v. Madrigal, 43 F.3d 1367, 1369 (10th Cir. 1994).

Timothy's first argument is that there was insufficient evidence to support his conviction for assault with a dangerous weapon pursuant to 18 U.S.C. § 113(c) because he lacked the specific intent for the crime due to his intoxicated state. As the jury was instructed, in order to prove specific intent, the government must establish that the defendant knowingly assaulted his brother with a dangerous weapon. Although intoxication or drunkenness alone will never provide a legal excuse for the commission of a crime, the fact that a person may have been intoxicated at the time of the commission of a crime may negate the existence of specific intent. See United States v. Sands, 968 F.2d 1058, 1064 (10th Cir. 1992).

The evidence in this case was sufficient to support the jury's conclusion that Timothy knowingly assaulted his brother. The altercation began when Timothy removed a folding knife from the scabbard on his belt, opened it, and locked the blade into place. Timothy stabbed Benjamin seven times. Benjamin tried to defend himself and repeatedly told his brother to stop. Benjamin testified that while Timothy was stabbing him, Timothy stated: "You goddam fucking brother, how come you're trying to do this to me again?" Rec. vol. IV at 169. One reasonable inference to draw from this evidence is that Timothy drew his knife with the intention of stabbing his brother and deliberately used

10

the weapon for that purpose. Even if Timothy may have blacked out after the incident, this does not necessitate a finding that Timothy did not have the requisite intent at the time the assault was committed. Therefore, we conclude there was sufficient evidence for a jury to conclude beyond a reasonable doubt that Timothy knowingly and intentionally assaulted his brother.

The second argument raised by Timothy is that his conviction for assault resulting in serious bodily injury pursuant to 18 U.S.C. § 113(f) was insufficient because the government failed to prove that Benjamin suffered a serious bodily injury. Timothy points to the testimony of the treating physician on cross-examination who testified that none of Benjamin's injuries were life-threatening. Aple's Answer Br. at 25. Because Benjamin's wounds were not life-threatening, Timothy argues that the government did not prove the necessary elements of the offense.

The district court instructed the jury that "serious bodily injury" is defined as "bodily injury that involves substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, or mental faculty." Rec. vol. V. at 274 (Jury Instructions dated Oct. 31, 1995); see United States v. Dennison, 937 F.2d 559, 562 (10th Cir. 1991) (applying substantially the same definition of "serious bodily injury"). Under this definition, there was ample evidence for the jury to find that Timothy's actions resulted in "serious bodily injury." At trial, in answering the question of how he felt when he was

11

being stabbed, Benjamin answered: "I didn't feel a thing except pain. I couldn't feel anything else." Rec. vol. IV at 171. Benjamin also testified that he "blacked out" after the assault, id. at 170--thereby meeting the "unconsciousness" criterion--and that he suffered from continued numbness in his leg where he was stabbed--indicating that he suffers from "protracted . . . impairment of the function of a bodily member." Vol. V. at 274 (Jury Instructions dated Oct. 31, 1995). Based on this evidence, we conclude that a jury could find beyond a reasonable doubt that Timothy's actions resulted in "serious bodily injury"--which is not limited to a finding that the injury was "life-threatening."

## CONCLUSION

For the reasons stated above, we conclude that the district court did not err in its decision to reduce Timothy's offense level for acceptance of responsibility under Sentencing Guidelines § 3E1.1, and that there was sufficient evidence to convict Timothy for violating 18 U.S.C. §§ 113(c) & (f). Accordingly, we AFFIRM the judgment of the district court. The mandate shall issue forthwith.

Entered for the Court,

Robert H. Henry
Circuit Judge

12